**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4039-18T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

MICHAEL D. WHITE,

     Defendant-Respondent.

_____

Submitted August 13, 2019 – Decided August 30, 2019

Before Judges Sumners and Moynihan.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 18-01-0079.

Charles A. Fiore, Gloucester County Prosecutor, attorney for appellant (Elizabeth Katherine Tornese, Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Ronald Craig Appleby, Assistant Deputy Public Defender, on the brief).

PER CURIAM

By leave granted, the State appeals from the motion judge's order granting defendant Michael D. White's motion to suppress two statements he gave to detectives to which he presented himself after learning he was suspected of involvement in a shooting in the apartment complex in which he lived; and from the denial of its subsequent motion for reconsideration. It argues:

> POINT I
>
> THE SUPPRESSION ORDER AND DENIAL OF RECONSIDERATION MUST BE REVERSED AS THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATE THAT DEFENDANT KNEW WHY HE WAS SPEAKING WITH DETECTIVES AND VOLUNTARILY WAIVED HIS <u>MIRANDA</u> RIGHTS TWICE.
>
> POINT II
>
> THE TRIAL COURT ERRONEOUSLY APPLIED THE FIVE-FACTOR TEST SET FORTH IN <u>STATE V. O'NEILL</u> WHEN THE FACTS DICTATE THE USE OF THE TRADITIONAL TOTALITY OF THE CIRCUMSTANCES ANALYSIS.

Unpersuaded by these arguments, we affirm.

When reviewing a judge's ruling on a motion to suppress, we defer to those factual findings that are supported by sufficient record evidence but disregard findings that are clearly mistaken. <u>State v. Hubbard</u>, 222 N.J. 249, 262 (2015). We, however, review the judge's legal conclusions de novo. <u>Id.</u> at 263.

2

From the motion judge's supported findings, we glean defendant was arrested when he reported to the Glassboro police department approximately twenty-four hours after a complaint-warrant, see Rule 3:2-1; Rule 3:2-3, was filed on October 28, 2017, by a Glassboro police detective charging defendant with crimes related to the shooting death of Michael Fleming, including first-degree murder.[1] Police investigation following discovery of the victim on October 28 revealed the victim's girlfriend, who knew defendant for "at least seven years" prior to the shooting, identified defendant as the person who shot and killed Fleming.

There is no evidence defendant was processed on the complaint-warrant or advised of the charges by the arresting officers. A little more than an hour after defendant arrived at the police department, the Glassboro detective and a Gloucester County Prosecutor's Office detective administered Miranda[2] warnings and took a statement from defendant. Neither detective advised

---

[1] The complaint-warrant is not part of the appellate record so we do not know the exact charges set forth therein except as set forth in the motion judge's opinion.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

defendant of the charges against him. That failure necessitates the suppression of the statement defendant gave to them.

In State v. Vincenty, our Supreme Court restated its holding in State v. A.G.D., 178 N.J. 56, 68 (2003), that "[t]he government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights." 237 N.J. 122, 125 (2019) (alteration in original) (quoting A.G.D., 178 N.J. at 68). The detectives who questioned Vincenty advised him: he had been identified from a video recording, photograph and DNA evidence as one of the assailants in an armed attempted robbery and attempted murder of a victim;[3] the judge had already charged him after police showed the judge evidence; the charges included gun charges. Id. at 126-28. Detectives also showed Vincenty "a list of the charges and explained to him that he had been charged with attempted homicide, robbery, and conspiracy to commit robbery." Id. at 128. The Court disagreed with our ruling that the record showed Vincenty was advised of the charges against him and, instead, determined the failure to

---

[3] Vincenty "acknowledged that he looked like one of the assailants." Vincenty, 237 N.J. at 136.

advise Vincenty of those charges "deprived [him] of the ability to knowingly and intelligently waive his right against self-incrimination." Id. at 126.

No doubt mindful of its holding in State v. Nyhammer, 197 N.J. 383, 404 (2009) – that "[t]he issuance of a criminal complaint and arrest warrant by a judge is an objectively verifiable and distinctive step, a bright line, when the forces of the state stand arrayed against the individual" – the Court reiterated the basis for suppression as enunciated in A.G.D.:

> This Court held that the defendant's confession should have been suppressed, A.G.D., 178 N.J. at 69, because the "government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights," id. at 68. If suspects are not informed that a criminal complaint or arrest warrant has been filed against them, they necessarily lack "critically important information" and thus "the State cannot sustain its burden" of proving a suspect has knowingly and intelligently waived the right against self-incrimination. Ibid. Because the detectives failed to inform the defendant that an arrest warrant had been issued, the defendant in A.G.D. was simply unable to execute a knowing and intelligent waiver of his right against self-incrimination. Ibid.
>
> [Vincenty, 237 N.J. at 133-34 (emphasis added).]

The Vincenty Court explicated that charged defendants may waive their right against self-incrimination, but,

[a]s that chain of events demonstrates, Vincenty's ability to knowingly and intelligently decide whether to waive his right against self-incrimination was fundamentally altered when he was informed of the criminal charges filed against him. Rather than inform Vincenty <u>fully of the charges</u> at the outset, the detectives told him at various points during the interrogation that some type of charges were filed against him. It was not until late in the interrogation -- well after the detectives read Vincenty his rights and asked him to waive his right against self-incrimination -- that the detectives <u>detailed the actual charges Vincenty was facing</u>. At the point when the detectives asked Vincenty to waive his right against self-incrimination, they failed to inform him of the <u>specific criminal charges filed against him</u>. Withholding that "<u>critically important information</u>" deprived Vincenty of the ability to knowingly and voluntarily waive the right against self-incrimination.

[<u>Id.</u> at 135 (emphasis added).]

The Court's holding makes clear, as the motion judge perceived, the failure of police to advise a defendant of the specific charges set forth in the filed complaint-warrant leaves the State without ability to prove that the defendant knowingly and intelligently waived his or her right against self-incrimination. <u>See</u> <u>ibid.</u>

In <u>State v. Henderson</u>, 397 N.J. Super. 398 (App. Div. 2008), <u>aff'd as modified</u>, 208 N.J. 208 (2011), police advised a defendant they had an warrant for his arrest and were taking him to the homicide unit; the defendant responded

he knew "what it's all about." Id. at 404. We "decline[d] the invitation to hold that the principles announced in A.G.D. extend to also informing an accused of the basis for the arrest warrant, particularly . . . when defendant well-understood why he was arrested." Ibid. The Vincenty Court did not so decline and required that police advise a defendant of the details of a defendant's particular charges. See Vincenty, 237 N.J. at 134.

It was not enough, as the State contends, that defendant knew he was a suspect in Fleming's shooting when he walked into the police department. As the motion judge found, the State failed to present clear evidence that defendant knew from the accusations he heard prior to going to the police department that the victim of the shooting was dead. Even if he did know, police were still obligated to explicitly advise him of the charges lodged in the complaint-warrant. Like the "defendant in A.G.D.[,] [defendant] was purposely kept in the dark by his interlocutors of this indispensable information." Nyhammer, 197 N.J. at 404-05. The State's failure to offer evidence that defendant was fully informed of those charges leaves it unable to prove beyond a reasonable doubt that defendant waived his right against self-incrimination, necessitating suppression of the statement he gave to the Glassboro and Gloucester County Prosecutor's Office detectives.

The motion judge also suppressed the statement defendant gave to a New Jersey State Police detective which commenced about two-and-one-quarter hours after the first statement ended. That detective had been called in to administer a polygraph examination to defendant. After it was determined the polygraph could not be administered because defendant had self-inflicted cuts on his arms, defendant and the detective, according to the motion judge, "continued to talk about the shooting [and] [e]ventually[] [defendant] confessed that he shot and killed . . . Fleming." Notably, at the start of the second statement, defendant was re-Mirandized and advised by the Glassboro detective "of the charges in the compliant[-]warrant, most specifically the murder."

The State argues the motion judge erred by applying the five-factor test set forth in State v. O'Neill, 193 N.J. 148, 180-81 (2007), instead of the totality-of-the-circumstances test set forth in Nyhammer, 193 N.J. at 404, in determining that the "spill over" from defendant's first statement required suppression of the statement to the State police detective. We are unconvinced.

The Nyhammer Court recounted:

> In O'Neill, we applied the totality-of-the-circumstances approach to the "'question-first, warn-later' interrogation procedure," in which the police first question a suspect in custody without the benefit of Miranda warnings and, after eliciting incriminating statements, then issue Miranda warnings and resume

questioning for the purpose of eliciting incriminating statements admissible at trial. 193 N.J. at 154-55. We held "that when Miranda warnings are given after a custodial interrogation has already produced incriminating statements, the admissibility of post-warning statements will turn on whether the warnings functioned effectively in providing the defendant the ability to exercise his state law privilege against self-incrimination." Id. at 180-81. In O'Neill, we specifically eschewed a bright-line rule and instead followed a traditional multi-prong test requiring a consideration of all relevant factors. Id. at 181.

[Nyhammer, 197 N.J. at 404 (second emphasis added).]

In O'Neill, the Court held, as a matter of State law,

when Miranda warnings are given after a custodial interrogation has already produced incriminating statements, the admissibility of post-warning statements will turn on whether the warnings functioned effectively in providing the defendant the ability to exercise his state law privilege against self-incrimination. In making that determination, courts should consider all relevant factors, including: (1) the extent of questioning and the nature of any admissions made by defendant before being informed of his Miranda rights; (2) the proximity in time and place between the pre- and post-warning questioning; (3) whether the same law enforcement officers conducted both the unwarned and warned interrogations; (4) whether the officers informed defendant that his pre-warning statements could not be used against him; and (5) the degree to which the post-warning questioning is a continuation of the pre-warning questioning. The factual circumstances in each case will determine the appropriate weight to be accorded to any factor or group of factors.

A-4039-18T2

[O'Neill, 193 N.J. at 181-82.]

The Court recognized Miranda's five required warnings "ensure that an individual would have a meaningful opportunity to exercise his right against self-incrimination," and that the burden is on the State "to demonstrate not only that the individual was informed of his rights, but also that he has knowingly, voluntarily, and intelligently waived those rights, before any evidence acquired through the 'interrogation can be used against him.'" Nyhammer, 197 N.J. at 400-01 (quoting Miranda, 384 U.S. at 467). "The essential purpose of Miranda is to empower a person—subject to custodial interrogation within a police-dominated atmosphere—with knowledge of his basic constitutional rights so that he can exercise, according to his free will, the right against self-incrimination or waive that right and answer questions." Id. at 406.

Similarly, the requirement that a charged defendant be apprised of the charges in the complaint-warrant – what Judge Arnold described as a sixth Miranda warning added by our Supreme Court in A.G.D.[4] – provides information, without which accused defendants "cannot knowingly and intelligently determine whether to waive their right against self-incrimination

---

[4] 32 N.J. Practice, Criminal Practice and Procedure, §17.4, at 250-51 (Leonard N. Arnold) (2018 ed.).

. . . ." Vincenty, 237 N.J. at 134. Thus, we perceive no reason why the O'Neill analysis should not be followed here.

We discern no difference between the scenario in O'Neill where police failed to initially administer Miranda warnings and this case where they failed to initially advise defendant of his charges. The O'Neill Court determined the "principle established in . . . A.G.D.—that police officers conducting a custodial interrogation cannot withhold essential information necessary for the exercise of the privilege—is equally applicable here" where detectives, prior to administering Miranda warnings, questioned the defendant and "extract[ed] damning admissions." O'Neill, 193 N.J. at 179.

> The two-step, "question-first, warn-later" interrogation [utilized by the detectives in O'Neill] is a technique devised to undermine both the efficacy of Miranda and our state law privilege. As in . . . A.G.D., we must set clear standards that will discourage law enforcement agencies from engaging in conduct that will deny a defendant subject to a custodial interrogation a true opportunity to assert his right against self-incrimination.
>
> [Id. at 180.]

The failure to inform defendant of the charges against him was the type of "end-run[] around Miranda" decried by the O'Neill Court, O'Neill, 193 N.J. at 184-85; as such, it is the equivalent of a failure to advise defendant of his

A-4039-18T2

Miranda rights. Unlike State v. Yohnnson, 204 N.J. 43, 61 (2010), relied upon by the State, where the investigators had no reason to believe that the arresting officers did not Mirandize the defendant, the Glassboro detective prepared the complaint-warrant and, as the motion judge found, the State presented no evidence that defendant was advised of the charges after he presented at the police department and before that Glassboro detective first contacted him.

We fully agree with the motion judge's relation of his findings to the five O'Neill factors. Much like the defendant in O'Neill who "had delivered to the detectives a motive, opportunity, and personal involvement in a crime that the detectives were able to exploit in further questioning defendant," id. at 182, defendant, in his initial statement provided detectives with inculpatory information, including, as the motion judge found,

> knowing the victim, being present in the . . . apartment complex on the evening of the murder, engaging in prior drug transactions with the victim, having a prior dispute with the victim over a motor vehicle [which dispute also involved the mother of the victim's girlfriend who identified defendant as the shooter], and believing that someone from the apartment complex who knew of his drug distribution habits set him up for the home[-]invasion robbery which took place in his apartment and in front of the females and children that resided with him

after defendant stopped buying marijuana from a supplier to whom he had been introduced by the victim.

The judge also found the State Police detective questioned defendant about two-and-one-half hours after the first statement was taken by the Glassboro and Prosecutor's Office detectives "under basically the same circumstances and environment": under arrest in the same police station, in the same or similar room. Although the judge acknowledged different detectives conducted the two interviews, the Glassboro detective "introduced the second session by advising [d]efendant of the charges against him." The judge also noted the subject matter of both interviews "was identical" save for the discussion about the polygraph and that the State Police detective was briefed by the other two detectives "and the briefing would most definitely have included the statements made by [d]efendant during the first session." The judge further found there was no evidence defendant was informed that any statement he made during the first interview could not be used against him; defendant, therefore, "proceeded with the second interrogation session with the knowledge" that the inculpatory statements he made during the first session could be used against him. Lastly, the judge found, notwithstanding the break between the first and second statements, the second statement "was a continuation of the

13

earlier interrogation" with the subject matter, environment and defendant's custodial status remaining the same.

Under the tenets announced in <u>O'Neill</u>, we see no error in the judge's determinations.[5]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Although we determine the <u>O'Neill</u> factors should be used in analyzing the admissibility of defendant's second statement, we note the motion judge also concluded that although most of the traditional totality of the circumstances factors – defendant's personal characteristics and prior experience with the criminal justice system, police techniques and the length of the statements – supported a finding of voluntariness, the second statement's inextricable link to the first mandated suppression of the latter statement.

A-4039-18T2