**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2740-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEREMY BENSON,

     Defendant-Appellant.

_____

Submitted August 30, 2022 – Decided September 6, 2022

Before Judges Gooden Brown and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-09-2195.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel M. Lamb, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jeremy Benson appeals from a May 23, 2021 judgment of conviction entered after defendant pled guilty to first-degree robbery, N.J.S.A. 2C:15-1(a)(2). We reject defendant's argument that the trial court's denial of his suppression motion was erroneous and affirm.

We discern the following facts from the record. On July 20, 2019, Samuel Rodriguez was robbed at gunpoint in front of his home in Camden City. The robbery was caught on Rodriguez's home surveillance camera. Although the video was of insufficient resolution to make out facial details of the robber, the video depicted a dark-skinned male of short, stocky build. Based on the identification of a vehicle the robber used to flee the scene, the investigation began to focus on defendant. Later that day, Rodriguez identified defendant as the robber from a photo array. On July 21, 2019, a complaint warrant was issued for defendant's arrest.

On August 21, 2019, defendant was arrested by the Marshals Task Force and interviewed by Detectives DeSantis and Kreidler at the Camden County Police Department. Before the detectives took a statement from defendant, DeSantis stated "[a]ll right, Mr. Benson . . . . You're being charged with -- some paperwork here. I got some charges here for -- oh, this is just a robbery[,]" to which defendant replied, "[r]obbery?" Before discussing the details of the case,

DeSantis stated each <u>Miranda</u>[1] right individually, asked defendant if he understood each right, and defendant responded "Mmm-hmm" after each right was verbally stated. The video statement also shows defendant nodding his head "in the affirmative" after each right was read to him. DeSantis then advised defendant that he had the option to waive his rights and provide a statement and asked defendant if he desired to waive his rights and answer questions or give a statement. Defendant responded "Mmm-hmm." DeSantis then provided defendant a <u>Miranda</u> waiver form, informed him of the date and time, instructed him to sign next to the "x," and told him to check off that each right was read to him. After defendant filled out the waiver form, defendant, DeSantis, and Kreidler all signed and dated the waiver.

Afterwards, DeSantis informed defendant,

> [n]ow, this case can end up in two directions. Right now, there's . . . a complaint there for robbery and weapons offenses, but no judge has been called yet, nothin' like that. We're here to get your version of the story before everybody makes their decisions down the road with this, okay?

DeSantis also stated, "[s]o it can go two different ways. . . . Either you took something from somebody and, you know, you come up with a plan to give that

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-2740-20

stuff back to 'em, or it can go the other way, that you were trying to kill them and attempted murder."

During defendant's statement, he repeatedly denied having anything to do with the robbery but admitted that he "always" parked his girlfriend's vehicle in that neighborhood when he was visiting a second girlfriend. Defendant also denied owning a gun. The seventeen-minute interview concluded after defendant asked for a lawyer and the detectives ceased their questioning.

On August 29, 2019, a Camden County Grand Jury returned a multi-count indictment against defendant, charging him with first-degree robbery, N.J.S.A. 2C:15-1(a)(2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count three); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count four).

Following the return of the indictment, defendant moved to suppress his statement. At the January 19, 2021 suppression hearing, DeSantis testified on behalf of the State. On the date of the incident, DeSantis had worked for the Camden County Police Department since 2013 and had seven years' prior experience at Hamilton Township Police Department and Atlantic County Prosecutor's Office. DeSantis testified that during the interview, defendant did

not appear to be under the influence of any drugs or alcohol and that defendant was responsive to his questions.

On March 4, 2020, based on DeSantis's credible testimony, the judge denied defendant's motion in an order and oral opinion.[2] On March 26, 2021, defendant pleaded guilty to first-degree robbery (count one) in exchange for the dismissal of the remaining counts in the indictment. On April 23, 2021, pursuant to the plea agreement, the judge sentenced defendant to seven years' imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant presents the following argument for our consideration:

> POINT I
>
> DEFENDANT'S STATEMENT MUST BE SUPPRESSED. HE DID NOT KNOWINGLY AND INTELLIGENTLY WAIVE HIS RIGHT TO REMAIN SILENT BECAUSE THE POLICE FALSELY REPRESENTED TO HIM THAT THE COMPLAINT HAD NOT YET BEEN REFERRED TO A JUDGE.

In reviewing a motion to suppress, this court defers to the factual and credibility findings of the trial court, "so long as those findings are supported by

---

[2] Defendant also filed a motion to preclude identification evidence, which the judge denied on March 4, 2021. Defendant does not appeal that decision.

sufficient credible evidence in the record." State v. Coles, 218 N.J. 322, 342 (2014) (quoting State v. Hinton, 216 N.J. 211, 228 (2013)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). The legal conclusions of the trial court "are reviewed de novo." Id. at 263.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "Inherent in every Fifth Amendment analysis is the question of whether the [suspect's] statement was voluntary, and, independently, whether the law enforcement officers taking it complied with Miranda." State v. W.B., 205 N.J. 588, 605 (2011). The suspect must be clearly and unequivocally informed of his or her right to remain silent and to have an attorney present during the interrogation. Miranda, 384 U.S. at 467-68, 470.

A person can waive those rights, but the waiver must be "knowing, intelligent, and voluntary in light of all the circumstances" and, under New

Jersey law, the prosecutor must prove those characteristics beyond a reasonable doubt. State v. Presha, 163 N.J. 304, 313 (2000). To determine "whether the waiver of rights was the product of a free will or police coercion[,]" a court considers the totality of the circumstances. State v. Nyhammer, 197 N.J. 383, 402 (2009). Factors under that test include the suspect's "age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature[,] and whether physical punishment or mental exhaustion was involved." Ibid. (quoting Presha, 163 N.J. at 313).

"If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to the interrogee and inform him in a simple declaratory statement of the charges filed against him before any interrogation." State v. Sims, 250 N.J. 189, 213 (2022). "If suspects are not informed that a criminal complaint or arrest warrant has been filed against them, they necessarily lack 'critically important information' and thus 'the State cannot sustain its burden' of proving a suspect has knowingly and intelligently waived the right against self-incrimination." State v. Vincety, 237 N.J. 122, 133-34 (2019) (quoting State v. A.D.G., 178 N.J. 56, 68 (2003)).

A-2740-20

Moreover, police "must be allowed to use techniques which effectively decrease the suspect's resistance to confess, while at the same time increasing a desire to tell the truth." State v. Patton, 362 N.J. Super. 16, 25 (App. Div. 2003). "There is no question that the use of trickery and deception provides a highly effective means of extracting confessions; and given the important role of confessions in law enforcement, police must be free to employ effective means of obtaining them." Ibid. As such, "[a] confession induced by deception or trickery is not inadmissible unless the method used was calculated to produce an untruthful confession or was offensive to due process." State v. Manning, 165 N.J. Super. 19, 30-31 (App. Div. 1978) (quoting 3 Francis Wharton, Wharton's, Criminal Evidence § 685, at 471-74 (13th ed. 1973)).

With these guiding principles in mind, we reject defendant's argument that his statement should have been suppressed. It is undisputed that prior to discussing the details of the case, DeSantis read defendant each Miranda right individually and asked defendant if he understood each right, and each time defendant responded affirmatively, both verbally and non-verbally. After being informed of his rights, defendant willingly filled out and signed the Miranda waiver form. As the judge stated, there is not "any argument or any question that[] when the sheet was read . . . defendant did not know what he was signing."

It is further undisputed that the seventeen-minute-long interview did not involve physical punishment or mental exhaustion or that defendant was unable to appreciate the circumstances he was under. The judge correctly found that defendant "was never promised anything. He wasn't coerced or threatened in any manner."

Furthermore, as the judge properly determined, defendant was aware of the warrant because he was arrested by the Marshals Task Force and knew of the robbery charges against him because DeSantis informed him in the beginning of the interview. Defendant also knew of the weapons charges against him because prior to getting into the details of the case DeSantis told defendant that there was "a complaint there for robbery and weapons offenses." Therefore, DeSantis complied with the requirement that "the officers must disclose [that there was a warrant] to the interrogee and inform him in a simple declaratory statement of the charges filed against him before any interrogation." Sims, 250 N.J. at 213.

Contrary to defendant's argument, DeSantis's statement that "no judge has been called yet," did not make defendant's statement involuntary because he still understood that he was under arrest for robbery charges. As the judge noted, prior to talking about the case, defendant was fully informed that there were

charges against him, what the charges were, and that those charges were the reason for his arrest. Additionally, DeSantis's statement that the case could "go two different ways" did not render defendant's statement involuntary because, as the judge correctly determined, the officers were allowed to use deception. The judge's conclusion that defendant's confession was knowing, intelligent, and voluntary under the totality of the circumstances is unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2740-20