**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1673-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NAHEEM K. DOLISON,
a/k/a KAQUON,

     Defendant-Appellant.

_____

Submitted September 21, 2022 – Decided September 27, 2022

Before Judges Accurso and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-02-0189.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Andrew F. Guarini, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Naheem K. Dolison was arrested in a stolen car fifteen or twenty minutes after the key fob was wrested from the owner by two masked men with guns.  After police told defendant he was being charged with receipt of stolen property, he gave a statement implicating himself in the robbery.  Following the grant of the State's motion to admit that statement, defendant entered a negotiated, conditional guilty plea to first-degree robbery, N.J.S.A. 2C:15-1.  He appeals pursuant to Rule 3:9-3(f), contending the court erred in granting the State's motion.  He raises two issues for our consideration:

> POINT I
>
> THE TRIAL JUDGE'S DECISION TO ADMIT THE INTERROGATION STATEMENT SHOULD BE REVERSED BECAUSE THE COURT ERRED IN CONCLUDING THAT THE DEFENDANT KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHTS TO REMAIN SILENT.
>
> POINT II
>
> THE STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE DEFENDANT WAS NOT INFORMED OF HIS TRUE STATUS AS A SUSPECT IN THE ROBBERY DESPITE POLICE HAVING PROBABLE CAUSE THAT HE COMMITTED IT.

We reject his arguments and affirm.  In accordance with current controlling caselaw, police were under no obligation to advise defendant, who had yet to

2

be charged with any crime, "of his true status as a suspect in the robbery" even if they had "probable cause that he committed it." See State v. Sims, 250 N.J. 189 (2022). Their failure to do so did not undermine defendant's waiver of the right to remain silent or the voluntariness of defendant's statement made after administration of Miranda[1] warnings.

Only one witness testified at the hearing on the State's motion, Detective Miguel Rivera. Rivera, a twelve-year veteran of the Jersey City Police Department and an investigator with the major case unit, explained he'd been called in to interview the victim and defendant following the latter's arrest in the victim's stolen car. Defendant had reportedly asked to speak to an officer.

When the detective and a colleague administered Miranda warnings to defendant, as evidenced by the DVD of the interrogation admitted at the hearing, they told him he'd "been charged with receiving stolen property." The detective admitted, however, he'd only intended to charge defendant with receipt of stolen property and had not actually sworn out a complaint-warrant before beginning the interrogation. He also acknowledged the detectives were investigating an armed robbery and defendant's involvement in it.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1673-19

Shortly after the interrogation began, defendant admitted he'd "moved" the car at the request of someone named "Jamaal," whom defendant encountered on the street near his home, acknowledging he'd suspected the car was stolen. Instead of concluding their interrogation with that admission, the detectives told defendant they didn't believe him and pressed him to explain how he'd really acquired the key fob. The detectives insisted defendant had been lying to them, told him this was his "chance to talk," that "everybody makes mistakes," "[n]obody got hurt," and although they were "not saying [defendant] had anything to do with it," they were sure he knew "how that played out."

When they got no further with defendant, the detectives told him to stop wasting their time, "everybody wants to get this done. Go home, or wherever, and you're not helping that cause." Finally, the detectives took a short break, telling defendant he had one more chance to "[g]ather [his] thoughts as to how exactly this whole thing unfolded." Rivera testified that during the break, he'd looked in on the officers conducting the property inventory, and learned defendant had been arrested wearing a skull cap. The victim claimed the robbers had both worn ski masks.

4

When the detectives returned to their interrogation room, they confronted defendant with the cap, which he admitted was his, and that he'd been wearing it rolled up on his head when he was arrested. Although knowing the victim claimed both robbers had brandished guns, the detectives lied to defendant, telling him only one of the robbers was armed, and asking which of them would be "getting charged with the gun, you or Mr. Unknown?"

Defendant claimed he did not have a gun but confessed to participating in the robbery with "Michael," someone he'd gone to school with. Following the interrogation, Rivera telephoned a judge and swore out a complaint-warrant charging defendant with first-degree armed robbery; second-degree unlawful possession of a weapon; second-degree certain persons offense; second-degree possession of a weapon for an unlawful purpose; and third-degree receipt of stolen property.

After hearing the testimony, viewing the DVD of the interrogation and reading the parties' supplemental briefs, the judge found defendant had been properly advised of his Miranda rights and knowingly and voluntarily waived those rights before making his statement to police. The judge rejected

defendant's reliance on A.G.D.[2] (holding police must advise a suspect of a pending criminal complaint or arrest warrant before questioning if the suspect is not otherwise aware of it) and Vincenty[3] (holding the failure of police to inform a suspect of a pending criminal charge or arrest warrant deprives him of the ability to knowingly waive his right against self-incrimination), because in each of those cases, the defendant was facing an actual charge of which he was not advised before waiving his Miranda rights, not a contemplated charge as here. The judge found defendant "was not facing an armed robbery charge. Clearly it was out there and the officer was investigating it but [defendant] was not informed about it because there was no arrest warrant, there was no complaint. He was not charged."

Defendant appeals, arguing the detectives' decision to tell him he was charged with receiving stolen property was done "deliberately to lessen the seriousness of the offense with the hope he would be more likely to waive his rights and then incriminate himself on the robbery." He claims it ran afoul of our decision in State v. Sims, in which we held a defendant, "[o]nce arrested, . . . was entitled to be informed of the charge for which he was being placed

---

[2]  State v. A.G.D., 178 N.J. 56 (2003).

[3]  State v. Vincenty, 237 N.J. 122 (2019).

under arrest before deciding whether to waive his right against self-incrimination." State v. Sims, 466 N.J. Super. 346, 367 (App. Div. 2021), rev'd 250 N.J. 189 (2022). Defendant also argues the detectives telling defendant he was only being charged with receiving stolen property "was a deceptive tactic," of the sort we recently condemned in State v. Diaz, 470 N.J. Super. 495, 503 (App. Div. 2022), "employed to circumvent the protective effects of the Miranda warnings."

Our scope of review of a decision admitting a defendant's statement is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Legal conclusions drawn from those facts, of course, are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

Since the initial briefing in this case, the Supreme Court has reversed our decision in Sims. 250 N.J. at 197. The Court in Sims instructed "[t]he rule announced in A.G.D. is clear and circumscribed. If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to

the interrogee" before beginning their questioning.  Id. at 213.  "The officers need not speculate about additional charges that may later be brought or the potential amendment of pending charges."  Id. at 214.  The Court directed that trial judges are to consider a defendant's claim that police delayed lodging charges in order to avoid having to advise him of the charges he faced "as part of the totality-of-the-circumstances test."  Id. at 216.

Applying the Court's ruling in Sims here makes clear the trial judge correctly deemed defendant's statement admissible at trial as the State proved beyond a reasonable doubt that defendant's statement was freely volunteered, and the detectives did not overbear defendant's will in the course of their interrogation.  State v. Hreha, 217 N.J. 368, 383 (2014).  While the detectives did not advise defendant he was a suspect in the armed robbery, the judge was correct in ruling there was no obligation on them to do so as defendant had not been charged with that or any crime when he was questioned by the detectives.

Applying the totality-of-the-circumstances test — in other words, assessing defendant as well as the character of the questioning, considering such factors as "'the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and

mental exhaustion were involved,'" ibid. (quoting State v. Galloway, 133 N.J. 631, 654 (1993)), the judge had no doubt defendant's waiver was knowing and voluntary. Nor do we.

Defendant was arrested after being pulled over in the victim's stolen car fifteen or twenty minutes after he and another man, both armed with guns, took the keys from him. Defendant was still wearing the skull cap he'd pulled down over his face when he robbed the victim. Although police told defendant why he was arrested — he was driving a stolen car — they did not tell him they were investigating the armed robbery of the car's owner.

But the circumstances of defendant's arrest make it impossible to conclude he was misled. See State v. Nyhammer, 197 N.J. 383, 407 (2009) (acknowledging "the reality that in many, if not most, cases the person being questioned knows he is in custody on a criminal charge"). The judge declined to find the detectives intended to deliberately deceive defendant by lessening the seriousness of the offense with which he'd been charged in the hope of inducing him to waive his rights and incriminate himself in the robbery. The judge instead accepted Rivera's testimony that he intended to charge defendant only with receipt of stolen property at the outset of the interview, and it was

only after the break, when he learned defendant was wearing a skull cap when arrested, that his involvement in the robbery became clear to the detective.

That finding is entitled to our deference, see Elders, 192 N.J. at 243-44. And the facts found by the judge are a far cry from the chicanery we condemned in Diaz where police deliberately misled defendant in "a planned investigative strategy to elicit incriminating statements" tying the defendant to an overdose death of a friend of someone he'd sold heroin to, before the defendant was alerted anyone had died. 470 N.J. Super. at 503. We acknowledge the detectives here lied to defendant in saying the victim had reported only one of the robbers had a gun. But the law "gives officers leeway to tell some lies during an interrogation." State v. L.H., 239 N.J. 22, 44 (2019). We cannot find the detectives' lie about whether the victim reported that one or both robbers were armed vitiated the voluntariness of defendant's confession under the totality of the circumstances. See Frazier v. Cupp, 394 U.S. 731, 737-39 (1969) (holding interrogation which included false representation to interrogee that his confederate had confessed did not violate the Due Process Clause).

We also reject defendant's contention the detectives minimized and contradicted the Miranda warnings by repeatedly assuring defendant he had

10

simply made a "mistake," "nobody got hurt" and "everybody wants to get this done. Go home, or wherever." See State v. O.D.A.-C., 250 N.J. 408, 424-25 (2022) (finding a "string of misrepresentations" by police to an interrogee, including "the warnings were only a 'formality,'" the statement would remain confidential, and that the interrogee's statements were "only going to help him" and "not going to hurt him" required suppression of the statement). Having undertaken "a searching and critical review of the record," Hreha, 217 N.J. at 381-82, we cannot find any of the detectives' statements to defendant, considered singularly or in combination, call into question the validity of defendant's waiver of his Miranda rights or the voluntariness of his statement.

Defendant's remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1673-19