SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Anthony Sims, Jr.** (A-53-20) (085369)

**Argued October 12, 2021 -- Decided March 16, 2022 -- Revised March 16, 2022**

**PATTERSON, J., writing for the Court.**

In this appeal, defendant Anthony Sims, Jr. challenges his conviction of attempted murder and weapons offenses arising from the April 9, 2014 shooting of P.V.  The Court first considers the Appellate Division majority's holding that police officers, prior to interrogation, are required to inform an arrestee of the charges that will be filed against him, even when no complaint or arrest warrant has been issued identifying those charges.  Here, the divided panel found that the police officers who interrogated defendant violated his Miranda rights by not providing that information.  Second, the Court considers whether the trial court's decision to admit at trial P.V.'s prior testimony at a pretrial hearing violated the rule against hearsay and the Confrontation Clause.

On April 13, 2014, four days after the shooting, detectives went to the hospital and met with P.V., who identified defendant as the man who shot him in a recorded statement.  On April 14, 2014, prior to the issuance of any complaint or warrant or the filing of formal charges against defendant, detectives arrested defendant and conducted a videorecorded interview.  Defendant was read his Miranda rights and he waived those rights.  In an interview that lasted just over two hours, defendant gave a statement in which he said that he knew P.V., that he was aware of the shooting, and that his girlfriend owned a vehicle that matched the description of a vehicle observed near the scene of P.V.'s shooting.  Defendant denied that he was involved in the shooting.

Defendant moved to suppress his April 14, 2014 statement to police.  Based on the totality of the circumstances, the trial court held that defendant's waiver of his Miranda rights was knowing and voluntary, and accordingly denied defendant's motion.  Defendant also moved to suppress P.V.'s April 13, 2014 statement to police at the hospital.  On April 14, 2016, the trial court held a Wade/Henderson hearing, and the State called P.V. as a witness.  During his direct examination, P.V. testified that he remembered nothing about the incident and had no recollection of telling detectives that defendant was the person who shot him.  When defense counsel cross-examined P.V., he suggested that he had learned details of the shooting in later conversations with his mother, reiterated that he had no recollection of the incident or his conversation with detectives, and stated that he feared the prosecutor's office and the police department.

1

P.V. was subsequently indicted for the murder of defendant's brother.  Although offered an immunity agreement by the State and ordered to testify by the trial court, P.V. asserted his Fifth Amendment privilege not to testify.  The trial court permitted the State to present at trial P.V.'s testimony at the Wade/Henderson hearing as the prior testimony of an unavailable witness.

The Appellate Division vacated defendant's convictions and remanded for a new trial.  466 N.J. Super. 346, 354-55 (App. Div. 2021).  A divided panel held that the police officers who interrogated defendant violated his Miranda rights.  Id. at 361-69.  The court unanimously held that the trial court's decision to admit at trial P.V.'s prior testimony violated the rule against hearsay and the Confrontation Clause.  Id. at 377-78.

The State appealed as of right as to the Miranda issue, and the Court granted certification on the remaining issues.  246 N.J. 146 (2021).

**HELD:**  The Court declines to adopt the new rule prescribed by the Appellate Division and finds no plain error in the trial court's denial of defendant's motion to suppress his statement to police.  The Court also concurs with the trial court that the victim's testimony at the pretrial hearing was admissible under N.J.R.E. 804(b)(1)(A)'s exception to the hearsay rule for the prior testimony of a witness unavailable at trial, and that the admission of that testimony did not violate defendant's confrontation rights.

1.  The Court first considers the trial court's decision denying defendant's motion to suppress his statement to police.  Under New Jersey law, the State bears the burden to prove beyond a reasonable doubt that a suspect's waiver of his privilege against self-incrimination prior to an inculpatory statement was knowing, intelligent, and voluntary in light of all the circumstances.  In State v. A.G.D., the Court departed from the totality-of-the-circumstances rule and required law enforcement officers to inform a suspect that a criminal complaint has been filed or arrest warrant has been issued before interrogating him.  178 N.J. 56, 68-69 (2003).  The Court reasoned that the failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights.  Id. at 68.  The rule announced in A.G.D. is clear and circumscribed.  If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to the interrogee and inform him in a simple declaratory statement of the charges filed against him before any interrogation.  The officers need not speculate about additional charges that may later be brought or the potential amendment of pending charges.  (pp. 23-28)

2.  The Appellate Division's expansion of the rule stated in A.G.D. is unwarranted and impractical.  A.G.D. mandates disclosure of factual information about pending charges that the officer can readily confirm and clearly convey.  The principle stated in A.G.D. stands in stark contrast to the Appellate Division's expanded definition of an arrestee's

2

Miranda rights, which relies not on an objective statement of the charges pending against the arrestee, but on an officer's prediction, based on information learned to date in a developing investigation, of what charges may be filed. The Appellate Division's new rule would starkly depart from the Court's prior precedent and from the law of every other jurisdiction. The Court affirms the trial court's application of the totality-of-the-circumstances standard to deny defendant's motion to suppress his statement. Defendant was read his Miranda rights and waived those rights verbally and in writing. (pp. 28-33)

3. The Court next considers the trial court's decision to admit into evidence P.V.'s testimony at the Wade/Henderson hearing at defendant's trial. N.J.R.E. 804(b)(1)(A) authorizes the admission of an unavailable declarant's testimony from a prior proceeding if the testimony "is now offered against a party who had an opportunity and similar motive in the prior trial, hearing or deposition to develop the testimony by examination or cross-examination." A declarant who persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so is deemed unavailable to testify at trial. N.J.R.E. 804(a)(2). The proponent of the evidence bears the burden of proving that the requirements of N.J.R.E. 804 are met. (pp. 33-38)

4. The trial court's admission of P.V.'s prior testimony constituted a proper application of N.J.R.E. 804(b)(1)(A). P.V. was unavailable under N.J.R.E. 804(a)(2) because he confirmed that he would invoke his right against self-incrimination if called as a witness despite the State's offer of immunity and the trial court's order that he testify. At the Wade/Henderson hearing, defense counsel not only had the opportunity to cross-examine P.V., as N.J.R.E. 804(b)(1)(A) requires, but thoroughly and skillfully questioned P.V. The jury had the benefit of that cross-examination when it considered P.V.'s hearing testimony and assessed his credibility. The State also demonstrated that defendant had a similar motive at the hearing to develop the testimony because at the hearing, as at trial, defendant's motive was to impeach P.V.'s credibility, underscore P.V.'s claimed lack of recollection, suggest that police coercion was a factor in P.V.'s identification of defendant, and attack P.V.'s statement as unreliable. (pp. 38-40)

5. The Court considers whether the introduction of P.V.'s statement violated defendant's rights under the Confrontation Clause. The Federal and State Constitutions provide that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. In Crawford v. Washington, the United States Supreme Court held that the framers of the Constitution intended the Confrontation Clause to bar the admission of "testimonial statements of a witness who did not appear at trial unless [the declarant is] unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Federal courts have held that a witness's testimony at a preliminary hearing, such as the Wade/Henderson hearing at issue here, can provide the

3

constitutionally mandated opportunity to cross-examine. Moreover, the defendant may be deemed to have had a prior opportunity for cross-examination even if the witness denies recollection of relevant events. The Confrontation Clause is not violated by the admission of an unavailable witness's prior testimony simply because that witness claims that he does not recall the event at issue. (pp. 40-44)

6. P.V.'s Wade/Henderson hearing testimony met the requirements of the Confrontation Clause. Just as P.V. was an "unavailable" declarant as defined in N.J.R.E. 804(a)(2), he was "unavailable to testify" at trial for purposes of the Confrontation Clause. See Crawford, 541 U.S. at 53. And defendant had the adequate "prior opportunity for cross-examination" envisioned by the Supreme Court's confrontation jurisprudence. See ibid. At the hearing, defendant had the opportunity to attack the credibility of P.V.'s statement identifying defendant as the shooter. Indeed, defendant elicited P.V.'s testimony disclaiming recollection of any statement, implying that comments attributed to him were his mother's, and inferring that he acted out of fear of some of the investigating officers. Finally, the trial court did not improperly admit P.V.'s April 13, 2014 statement to police at the hospital through the State's questioning of P.V. at the Wade/Henderson hearing. P.V.'s statement was not offered into evidence -- let alone admitted into evidence -- at defendant's trial, and the court was not asked to exclude any portion of his testimony. There was no improper admission of hearsay within hearsay here. (pp. 44-47)

**REVERSED and REMANDED to the Appellate Division.**

**JUSTICE ALBIN, dissenting,** would reverse Sims's conviction on the grounds that the admission of Sims's statement violated his right against self-incrimination and the admission of P.V.'s hearsay statements implicating Sims violated Sims's confrontation rights. Justice Albin writes that concealing from Sims the charges that he was facing did not comport with the guarantees afforded to the accused under New Jersey's law against self-incrimination or jurisprudence, noting that police officers should have no difficulty telling the person the charge or charges that they believe justify the defendant's detention. Without that critical information, Justice Albin explains, a defendant cannot intelligently decide whether to waive his right against self-incrimination. According to Justice Albin, Sims did not have the same motive or opportunity to cross-examine P.V. at the Wade hearing that he would have at trial had P.V. testified. Justice Albin stresses the limited purpose of a Wade hearing and that Sims's attorney made clear that his cross-examination of P.V. at trial would have been far more extensive. In Justice Albin's view, P.V.'s hearsay statement at the hospital was laundered through the Wade hearing intact and presented fresh at trial but without a witness to confront.

**CHIEF JUSTICE RABNER and JUSTICE SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.**

4

SUPREME COURT OF NEW JERSEY

A-53 September Term 2020

085369

State of New Jersey,

Plaintiff-Appellant,

v.

Anthony Sims, Jr.,

Defendant-Respondent.

On appeal from and certification to the Superior Court,
Appellate Division, whose opinion is reported at
466 N.J. Super. 346 (App. Div. 2021).

| Argued | Decided | Revised |
| October 12, 2021 | March 16, 2021 | March 16, 2022 |

Monica do Outeiro, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
appellant (Lori Linskey, Acting Monmouth County
Prosecutor, attorney; Maura K. Tully, Assistant
Prosecutor, of counsel and on the briefs).

Rochelle M. Watson, Deputy Public Defender II,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Rochelle M. Watson, and
Robert Carter Pierce, Designated Counsel, on the
briefs).

Frank Muroski, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Andrew J. Bruck, Acting Attorney General, attorney;
Frank Muroski, of counsel and on the brief).

John McNamara, Jr., Special Deputy Attorney General/Acting Chief Assistant Morris County Prosecutor, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Esther A. Suarez, President, County Prosecutors Association of New Jersey, attorney; John McNamara, Jr., of counsel and on the brief).

Aidan P. O'Connor argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, defendant Anthony Sims, Jr. challenges his conviction of attempted murder and weapons offenses arising from the April 9, 2014 shooting of a twenty-eight-year-old man, P.V., outside his grandmother's home.

The appeal requires that we consider two issues. First, we review as of right the decision of a divided Appellate Division panel vacating defendant's convictions and remanding for a new trial on the ground that the police officers who interrogated defendant violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966). State v. Sims, 466 N.J. Super. 346, 361-69 (App. Div. 2021). Deciding an issue that defendant did not raise before the trial court, the Appellate Division adopted a new rule requiring police officers, prior to interrogation, to inform an arrestee of the charges that will be filed

2

against him, even when no complaint or arrest warrant has been issued identifying those charges. Id. at 369. We decline to adopt the rule prescribed by the Appellate Division and find no plain error in the trial court's denial of defendant's motion to suppress his statement to police.

Second, we consider the Appellate Division's ruling that defendant was deprived of a fair trial because of an evidentiary determination by the trial court. The Appellate Division held that the trial court's decision to admit at trial P.V.'s prior testimony at a pretrial hearing, in which P.V. claimed that he had no recollection of an earlier out-of-court statement to police implicating defendant in the crime, violated the rule against hearsay and the Confrontation Clause. Id. at 377-78. We concur with the trial court that the victim's testimony at the pretrial hearing was admissible under N.J.R.E. 804(b)(1)(A)'s exception to the hearsay rule for the prior testimony of a witness unavailable at trial, and that the admission of that testimony did not violate defendant's confrontation rights.

Accordingly, we reverse the Appellate Division's judgment and remand this matter to the appellate court so that it may consider two issues raised by defendant that it did not reach.

3

I.

A.

We derive our summary of the facts from the record presented to the trial court in pretrial motions and the trial record.

On April 9, 2014, P.V.'s grandmother heard P.V. calling for help outside her home in Red Bank. She found her grandson "partially in the driveway on the pavement" and "partially in the car." P.V. had sustained twelve bullet wounds to the torso, leg, buttocks, and upper arm, and was bleeding "in two, three places very badly." According to P.V.'s grandmother's trial testimony, she asked P.V. "who did this to you," and he responded, "Sims." She stated that when she pressed her grandson to tell her who "Sims" was, he responded, "B.J.'s brother." P.V.'s grandmother testified that the nickname "B.J." denoted defendant's brother, whom she knew because he was a friend of several members of her family.

P.V.'s uncle called 9-1-1, and P.V. was taken to a hospital. Police officers were initially unable to speak with P.V. because he was intubated. On April 13, 2014, four days after the shooting, P.V.'s mother informed Detective Robert Campanella of the Red Bank Police Department that P.V. was no longer intubated. Later that day, Detective Brian Weisbrot of the Monmouth County Prosecutor's Office, accompanied by Campanella and another Red

4

Bank officer, Detective James DePonte, went to the hospital and met with P.V., who agreed to give them a recorded statement.

In his statement, P.V. said that on the evening of the shooting, he was sitting in his car talking on his phone and "noticed a man crouched down holding a gun with two hands aiming in a like crouching position" and that the man "started shooting" at him. P.V. stated that "[t]he minute that I looked at him, I knew what it was and I knew who it was, Anthony Sims, Jr.," whom P.V. had known for ten years through defendant's brother, B.J. According to the statement, P.V. told the detectives that he and defendant's brother "had a falling out," "were supposed to fight," and that "B.J. and Anthony Sims are brothers." P.V. said that he thought that defendant's brother was involved in the shooting incident because he did not have "any other problems with Anthony Sims, Jr." and because, when he saw defendant's brother B.J. two hours before the shooting, B.J. "pulled off." P.V. identified the weapon used by defendant in the shooting as a "black semiautomatic."

P.V. identified a photograph of defendant, marked it with defendant's name, and wrote the date and time of the identification and his initials on defendant's photograph.

On April 14, 2014, prior to the issuance of any complaint or warrant or the filing of formal charges against defendant, Campanella and Weisbrot

5

arrested defendant.  According to Campanella's trial testimony, he advised defendant "that he was being placed under arrest," handcuffed him, and told him that they would transport him to a satellite facility of the prosecutor's office.  Campanella recalled that defendant asked "what was going on and why he was being placed under arrest," and that he told defendant that the officers "would get into the details" when they reached the prosecutor's office.  Weisbrot, Campanella, and DePonte then transported defendant to the prosecutor's office and escorted him to an interview room.

Weisbrot and Campanella then conducted a videorecorded interview.  Using a Miranda waiver form, Weisbrot read defendant his Miranda rights.  Defendant asked, "[s]o I'm under arrest or something?"  Weisbrot told defendant, "[y]ou are under arrest yes. .  I'm sure you have a ton of questions.  I'll be happy to get into all that, okay, in just a few minutes.  Let's just finish this form.  Okay?"  Defendant then acknowledged and waived his Miranda rights.

In an interview that lasted just over two hours, defendant gave a statement in which he said that he knew P.V., that he was aware of the shooting, and that his girlfriend owned a blue Ford Explorer, a vehicle that matched the description of a vehicle observed near the scene of P.V.'s

6

shooting. Defendant denied that he was involved in the shooting and stated that his brother, B.J., had no "beef or issues" with P.V. or his family.

## B.

### 1.

A grand jury indicted defendant for first-degree attempted murder, with a sentencing enhancer that the crime had been committed with a firearm; first-degree unlawful possession of a weapon, later downgraded by the trial court to a second-degree offense; second-degree possession of a weapon for an unlawful purpose; and second-degree certain persons not to possess weapons, a charge that the State dismissed before trial.

### 2.

Defendant moved to suppress his April 14, 2014 statement to police. He conceded that the officers had informed him of his <u>Miranda</u> rights and that he had acknowledged those rights and signed a waiver form. Defendant argued, however, that because the detectives were aware that he was on parole on the date of his arrest, they should have refrained from questioning him until they determined whether he had an attorney. He also contended that the officers used deceptive techniques in a lengthy interrogation, and that they should have either repeated the <u>Miranda</u> warnings or terminated questioning. Defendant did not claim before the trial court that his statement should be suppressed

because he was not informed before his interrogation of the reason for his arrest or the charges that he would later face.

The trial court conducted a hearing pursuant to N.J.R.E. 104 with respect to defendant's motion to suppress his statement. Based on the totality of the circumstances, the court held that the State had proven beyond a reasonable doubt that defendant's waiver of his Miranda rights was knowing and voluntary, and accordingly denied defendant's motion to suppress.

3.

Defendant also moved to suppress P.V.'s April 13, 2014 statement to police at the hospital, in which P.V. identified defendant as the man who shot him.

On April 14, 2016, the trial court held a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967) and State v. Henderson, 208 N.J. 208 (2011). The State called P.V. as a witness at the Wade/Henderson hearing. During his direct examination, P.V. claimed that because of the "traumatic experience" of the shooting, he remembered nothing about the incident. P.V. testified that he had no recollection of telling Campanella, Weisbrot, or DePonte that defendant was the person who shot him. He claimed that he did not recall describing to the officers the weapon used in the shooting, providing them with details of the incident, discussing with them a dispute with

8

defendant's brother B.J., or initialing a photograph of defendant at their request. P.V. confirmed the accuracy of his date and place of birth, address, social security number, and other biographical details set forth in his April 13, 2014 statement, but said that he did not recall providing those details to the detectives.

Defense counsel cross-examined P.V. at the Wade/Henderson hearing. P.V. suggested that he had learned details of the shooting in later conversations with his mother and reiterated that he had no recollection of the incident or his conversation with detectives on April 13, 2014. P.V. stated that since the date of his statement to the officers, he had cut back on prescription medication that had affected his memory. He acknowledged his prior convictions and insisted that his testimony at the Wade/Henderson hearing was truthful. P.V. said that the officers had not threatened him, but that he feared the prosecutor's office and believed that the Red Bank Police Department was conducting a "witch hunt" against him.

Following P.V.'s testimony at the hearing, the State advised the trial court that it viewed P.V.'s stated lack of recollection of the shooting to be feigned. The court agreed that P.V. was apparently feigning a lack of recollection but noted that the jury would determine P.V.'s credibility. The

9

trial court denied defendant's motion to suppress P.V.'s out-of-court statement and granted the State's motion to admit that statement into evidence.

On June 6, 2017, the State notified the trial court that P.V. had been indicted for the murder of defendant's brother, B.J. The State told the court that it understood that if P.V. were called as a witness at defendant's trial, he would likely invoke his Fifth Amendment privilege against self-incrimination and decline to testify. The State represented that it had been advised that P.V. would refuse to testify even if he were offered immunity. It urged the court to hold that P.V. was "unavailable" to testify at trial pursuant to N.J.R.E. 804(a)(2), which provides that a witness who "persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so" is "unavailable" for purposes of N.J.R.E. 804. The State asked the trial court to admit P.V.'s testimony at the Wade/Henderson hearing as the testimony of an unavailable witness at a prior hearing pursuant to N.J.R.E. 804(b)(1)(A).

Defendant opposed the admission of P.V.'s testimony on the ground that the attorney who had represented him at the Wade/Henderson hearing had not asked P.V. all of the questions that his trial counsel would ask P.V. were he to testify before the jury at trial. Defendant argued that he had the right to confront P.V. at trial so that the jury could observe his demeanor. He asserted

10

that there were insufficient indicia of reliability to admit P.V.'s prior testimony under an exception to the hearsay rule, in light of the uncertainty of P.V.'s identification of defendant as the shooter.

The trial court ruled that if P.V. refused to testify on Fifth Amendment grounds, he would be deemed unavailable to testify at trial pursuant to N.J.R.E. 804(a)(2) and his testimony at the Wade/Henderson hearing would therefore be admissible at defendant's trial as the prior testimony of an unavailable witness under N.J.R.E. 804(b)(1)(A).

4.

At defendant's trial, the State played for the jury his videorecorded statement given to police on April 14, 2014.

At a hearing outside of the presence of the jury, P.V.'s counsel informed the trial court that the State, with the approval of the Monmouth County Prosecutor and the Attorney General, had offered P.V. an immunity agreement pursuant to N.J.S.A. 2A:81-17.3, and that P.V. had nonetheless decided to assert his Fifth Amendment privilege if called as a witness at trial. The trial court ordered P.V. to testify, but P.V. maintained his position that he would refuse to do so. The trial court declared P.V. to be "unavailable" as a witness pursuant to N.J.R.E. 804(a)(2), thus permitting the State to present his

11

testimony at the Wade/Henderson hearing as the prior testimony of an unavailable witness.

P.V. did not testify at defendant's trial. The trial court instructed the jury that P.V. was alive but "legally unavailable" and cautioned the jury not to speculate about the reason for P.V.'s unavailability or draw any inference from either party's failure to call him as a witness.

During the direct examination of Weisbrot, the State presented to the jury P.V.'s testimony at the Wade/Henderson hearing, sanitized to remove information about P.V.'s prior convictions. The prosecutor read to the jury the questions that the State had posed to P.V. at the hearing, which incorporated details provided by P.V. during his April 13, 2014 statement to police. Weisbrot read P.V.'s answers to those questions, in which P.V. denied any recollection of the shooting and said that he remembered nothing about his conversation with the officers on that date.

In addition to defendant's statement and the testimony of P.V. at the Wade/Henderson hearing, the State presented the testimony of: (1) a witness who said that she heard a sound like "firecrackers" and saw a man wearing a black hoodie get into a blue SUV; (2) a witness who said he was an acquaintance of defendant and that he saw defendant wearing a black hoodie at around 6:00 or 6:30, the evening of the shooting; (3) a witness who lived near

12

the scene of the shooting and stated that when she ran out of her home to investigate the sound of gunshots, she saw defendant carrying a gun, and he raised the gun in her face; and (4) surveillance video showing a person wearing dark clothing and carrying a black semiautomatic pistol running near the location of the shooting shortly after it occurred.

The jury convicted defendant of all charges. The trial court sentenced him to an aggregate term of fifty years' imprisonment subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2, on the attempted murder charge, and concurrent terms of imprisonment on the weapons charges.

C.

Defendant appealed his conviction and sentence. He asserted for the first time that the police did not tell him why he was arrested and that the admission of his April 14, 2014 statement to police therefore violated his Miranda rights and constituted plain error. Defendant contended that all evidence obtained as a result of his statement should have been excluded as the "fruit of the poisonous tree." Defendant also challenged the admission of P.V.'s testimony at the Wade/Henderson hearing as a violation of the Rules of Evidence and his Sixth Amendment confrontation rights. In addition, defendant argued for the first time that the State committed prosecutorial

13

misconduct by virtue of a comment made by the prosecutor in summation and asserted that his sentence was excessive.

In a published opinion written by Judge Rothstadt, with Judge Susswein concurring in part and dissenting in part, the Appellate Division vacated defendant's conviction and remanded the matter to the trial court for a new trial. Sims, 466 N.J. Super. at 354-55, 379.

By a vote of two to one, the Appellate Division held that the trial court violated defendant's Miranda rights and committed plain error when it admitted into evidence defendant's April 14, 2014 statement to police. Id. at 361-69.

The Appellate Division majority relied on our decision in State v. A.G.D., in which we held that a Miranda waiver is invalid if police do not inform a defendant that a criminal complaint has been filed or an arrest warrant has been issued against him. Sims, 466 N.J. Super. at 364 (citing A.G.D., 178 N.J. 56, 58-59 (2003)). The majority also invoked our decision in State v. Vincenty, in which we held that if charges have been filed against a suspect prior to his interrogation, law enforcement officers should provide him with a "simple declaratory statement" identifying those charges before questioning him. Sims, 466 N.J. Super. at 364 (quoting Vincenty, 237 N.J. 122, 134 (2019)).

14

The Appellate Division majority construed <u>A.G.D.</u> and <u>Vincenty</u> to require that a defendant who has been arrested "be advised of the 'actual' and 'specific' charges he is facing," whether or not any such charges have been formally filed. <u>Id.</u> at 367 (quoting <u>Vincenty</u>, 237 N.J. at 135). It reasoned that a defendant, "[o]nce arrested," must be "informed of the charge for which he was being placed under arrest before deciding whether to waive his right against self-incrimination." <u>Ibid.</u> The Appellate Division majority held that "in response to defendant's inquiry as to whether he was arrested, the interrogating officers not telling defendant the charges for which he was arrested did not satisfy the requirements of <u>A.G.D.</u> and <u>Vincenty</u>." <u>Ibid</u>.

Two footnotes in the majority opinion defined the scope of the Appellate Division's new rule. First, the Appellate Division stated that "in this case we are only addressing where an officer's probable cause to arrest is developed through an investigation, not when an arrest is made spontaneously when responding to a crime scene or after witnessing a crime being committed." <u>Id.</u> at 368 n.6. The court added that its holding did "not address custodial interrogation that occurs after an 'unforeseeable and spontaneous' arrest because those facts are not in this case." <u>Ibid.</u> (quoting <u>State v. Witt</u>, 223 N.J. 409, 450 (2015)).

15

Second, the Appellate Division majority dismissed the dissenting judge's concern "that our holding will create logistical problems for law enforcement," noting that

> [o]ur opinion is not intended to suggest that the charge upon which an officer believes he or she has probable cause to arrest must be the specific charge with which a defendant is ultimately charged. Rather, our holding is limited to requiring that the interrogating officer inform the arrested interrogee of the charge that, <u>at the time of arrest</u>, the officer had probable cause to believe defendant committed. We recognize that the charge may morph into a different degree crime or even a totally different offense as a post-interrogation investigation develops. We still conclude the law requires an officer be transparent and truthful about why a defendant was arrested before a request is made for a waiver of his or her <u>Miranda</u> rights.
>
> [<u>Id.</u> at 368-69 n.7.]

Acknowledging "that the trial court did not have an opportunity to consider the issue that we determined warrants a new trial in this case," the Appellate Division majority left to the trial court's determination on remand the scope of the evidence to be barred on retrial by virtue of its holding. <u>Id.</u> at 369.

In his concurring and dissenting opinion, Judge Susswein parted company with the majority on the <u>Miranda</u> issue. <u>Id.</u> at 379-86 (Susswein, J., concurring and dissenting). He noted that when a judge has issued a criminal

16

complaint or arrest warrant, police officers are in a position "to provide a 'simple declaratory statement' to inform an interrogee accurately and definitively as to the nature and seriousness of the charges that have been filed as of the time of a custodial interrogation." Id. at 381 (quoting Vincenty, 237 N.J. at 134). Judge Susswein observed that, in such a setting, "there is no ambiguity as to the essential nature and gradation of the charge(s) the defendant is facing because the specific offense(s) for which a judge found probable cause are set forth in the charging document." Ibid. (citing R. 3:2-1(a)(1)). Judge Susswein explained that in a case in which a judge has not approved charges against a suspect, an officer may "have a lawful basis for an arrest but insufficient information, pending further investigation, to determine which exact offense(s) have been committed." Ibid. In Judge Susswein's view, "extending the bright-line rule established in Vincenty could put the proverbial cart before the horse by requiring a police officer to advise the custodial interrogee as to the specific charges he is facing before an informed charging decision can be made." Id. at 383.

The Appellate Division unanimously concluded that the trial court abused its discretion when it admitted P.V.'s testimony at the Wade/Henderson hearing because the testimony revealed to the jury P.V.'s assertions in his April 13, 2014 statement to police. Id. at 378. It rejected the trial court's

17

holding that P.V.'s hearing testimony met the requirements of N.J.R.E. 804(b)(1)(A), ruling that defendant lacked an opportunity and similar motive in the Wade/Henderson hearing "to develop the victim's testimony by cross-examination." Id. at 377 (citing State v. Coder, 198 N.J. 451, 467 (2009)). The Appellate Division held that because "the purpose of the hearing was limited to the victim's out-of-court identification of defendant," defendant could not achieve the objective he would have pursued at trial: "to attack the victim's credibility in the eyes of the factfinder, specifically the veracity of his identification of defendant as the shooter." Ibid.

The Appellate Division also ruled that the admission of P.V.'s testimony at the Wade/Henderson hearing violated defendant's rights under the Confrontation Clause. Ibid. The court held that because P.V. claimed that he had no recollection of the shooting, defendant had no "meaningful opportunity to cross-examine" him. Id. at 378. The court held that because P.V.'s statement was elicited through the testimony of Weisbrot -- not the testimony of P.V. himself -- "defendant was deprived of the jury being able to assess the victim's demeanor." Ibid. The Appellate Division concluded that by admitting P.V.'s testimony at the Wade/Henderson hearing, the trial court had also admitted P.V.'s April 13, 2014 statement to police at the hospital, because

18

the State's questioning of P.V. incorporated the contents of that statement.  Id. at 371-72, 377-78.

The Appellate Division did not reach the prosecutorial misconduct and sentencing issues raised by defendant.  Id. at 378.

D.

Pursuant to Rule 2:2-1(a)(2) and based on Judge Susswein's dissent, the State appealed as of right the Appellate Division's decision vacating defendant's conviction based on a violation of his Miranda rights.  We granted the State's petition for certification, in which it challenged the Appellate Division's holding regarding the trial court's admission of P.V.'s testimony at the Wade/Henderson hearing, as well as its decision regarding defendant's waiver of his Miranda rights.  246 N.J. 146 (2021).  We also granted the motions of the Attorney General, the County Prosecutors Association of New Jersey, and the Association of Criminal Defense Lawyers of New Jersey to appear as amici curiae.

II.

A.

The State urges the Court to reverse the Appellate Division's determination that defendant's Miranda waiver was not knowing, intelligent, and voluntary because the detectives who questioned him did not identify the

19

charges that were later brought against him. It argues that the new rule announced by the Appellate Division is an unwarranted extension of A.G.D. and Vincenty that would introduce ambiguity and uncertainty into police interrogations of arrestees. The State concurs with Judge Susswein that the Appellate Division's rule is unworkable because it would require police officers to speculate on the charges that an arrestee might eventually face when no judge has issued a complaint-warrant or arrest warrant.

The State also challenges the Appellate Division's ruling regarding the admission at defendant's trial of P.V.'s testimony at the Wade/Henderson hearing. According to the State, P.V. was clearly "unavailable" under N.J.R.E. 804(a)(2) because he invoked his Fifth Amendment rights and declined to testify despite an offer of immunity, and the requirements of N.J.R.E. 804(b)(1)(A) were satisfied because defendant had a sufficient opportunity and similar motive to cross-examine P.V. at the hearing. The State contends that pretrial testimony admissible under N.J.R.E. 804(b)(1) also satisfies the mandate of the Confrontation Clause.

### B.

Defendant concurs with the Appellate Division majority that our decisions in A.G.D. and Vincenty compel interrogating officers to advise an individual arrested without a warrant about the charges that he faces before

20

questioning him.  He asserts that absent such a disclosure, the arrestee's

Miranda waiver is invalid because he is not in a position to assess his

sentencing exposure or limit the scope of his statement.  Defendant argues that

the concerns expressed by Judge Susswein and the State about the practical

impact of the Appellate Division's new rule are unfounded because law

enforcement officers are thoroughly trained to assess probable cause and make

charging determinations.

Defendant also urges that we affirm the Appellate Division's decision

reversing his conviction because the trial court admitted into evidence P.V.'s

testimony at the Wade/Henderson hearing.  He contends that the admission of

that testimony violated the Rules of Evidence because he did not have a

"similar motive" to cross-examine P.V. at the hearing and at trial, and that

portions of the hearing transcript admitted into evidence disclosed to the jury

P.V.'s out-of-court statement.  Defendant also asserts that the evidence

violated his confrontation rights because the jury had no opportunity to

observe P.V.'s demeanor.

## C.

Amicus curiae the Attorney General argues that the Appellate Division's

new Miranda waiver rule is unprecedented, unnecessary, and impractical, and

urges us to reject that rule.  The Attorney General contends that the admission

of P.V.'s pretrial testimony satisfied N.J.R.E. 804(b)(1)(A) and the Confrontation Clause because defendant had both an opportunity to cross-examine the witness and a motive to do so similar to the motive defendant would have had if his counsel had cross-examined P.V. at trial.

D.

Amicus curiae the County Prosecutors Association of New Jersey agrees with the State and the Attorney General that the Appellate Division majority's expanded Miranda rule unnecessarily impedes interrogations of uncharged suspects.

E.

Amicus curiae the Association of Criminal Defense Lawyers of New Jersey contends that the Appellate Division majority's Miranda ruling is a logical extension of A.G.D. that is easily implemented because officers know what crimes are at issue when they arrest suspects and can identify those crimes to arrestees before interrogating them. Amicus asserts that defendant lacked a motive to cross-examine P.V. that was similar to the motive that he would have had at trial and argues that defendant was deprived of meaningful confrontation because P.V. did not testify at trial.

III.

A.

We first consider the trial court's decision denying defendant's motion to suppress his statement to police.

When we review a trial court's decision on a motion to suppress a defendant's statement, we defer to the factual findings of the trial court if those findings are supported by sufficient credible evidence in the record. State v. S.S., 229 N.J. 360, 374 (2017). Because defendant did not argue before the trial court that his Miranda waiver was invalid because he was not informed, prior to his interrogation, of the offenses for which he was later charged, we review the trial court's determination on that question for plain error. R. 2:10-2; State v. Funderburg, 225 N.J. 66, 79 (2016). We review de novo the Appellate Division's legal determination expanding the Miranda rights of arrestees in cases in which no complaint-warrant or arrest warrant has been issued. Vincenty, 227 N.J. at 132; State v. Hubbard, 222 N.J. 249, 263 (2015).

B.

"The privilege against self-incrimination, as set forth in the Fifth Amendment to the United States Constitution, is one of the most important protections of the criminal law." State v. Presha, 163 N.J. 304, 312 (2000)

23

(citing U.S. Const. amend. V; State v. Hartley, 103 N.J. 252, 262 (1986)). Although New Jersey has no constitutional provision addressing the privilege against self-incrimination, our "common law has granted individuals the 'right against self-incrimination since colonial times.'" Vincenty, 237 N.J. at 132 (quoting A.G.D., 178 N.J. at 66). Our law maintains "an unyielding commitment to ensure the proper admissibility of confessions." Ibid. (quoting State v. Reed, 133 N.J. 237, 252 (1993)).

Under New Jersey law, "[a] confession obtained during a custodial interrogation may not be admitted in evidence unless law enforcement officers first informed the defendant of his or her constitutional rights." State v. Hreha, 217 N.J. 368, 382 (2014) (citing Miranda, 384 U.S. at 444). We impose on the State the burden to prove beyond a reasonable doubt that a suspect's waiver of his privilege against self-incrimination prior to an inculpatory statement "was knowing, intelligent, and voluntary in light of all the circumstances." Presha, 163 N.J. at 313.

Generally, when a court determines whether an interrogee has knowingly, intelligently, and voluntarily waived his right against self-incrimination in the setting of a custodial interrogation, it considers the totality of the circumstances. State v. Nyhammer, 197 N.J. 383, 402-03 (2009); State v. Dispoto, 189 N.J. 108, 124-35 (2007); State v. O'Neill, 193 N.J. 148, 181

24

(2007). "Only in the most limited circumstances have we applied a per se rule to decide whether a defendant knowingly and voluntarily waived Miranda rights." Nyhammer, 197 N.J. at 403 (discussing A.G.D., 178 N.J. at 68; Reed, 133 N.J. at 261-64).

In A.G.D., officers investigating the alleged sexual abuse of a minor obtained a warrant for the defendant's arrest but "neither executed the arrest warrant nor informed defendant that such a warrant had been issued" before interrogating him. 178 N.J. at 59. Reviewing the trial court's denial of defendant's motion to suppress his statement, we departed from the totality-of-the-circumstances rule and required police officers to inform a suspect that a criminal complaint has been filed or an arrest warrant has been issued before interrogating him. Id. at 68-69. As we explained, the "defendant was disadvantaged by a lack of critically important information. The government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights." Id. at 68. We reasoned that "a criminal complaint and arrest warrant signify that a veil of suspicion is about to be draped on the person, heightening the risk of criminal liability." Ibid. Thus, "[w]ithout advising the suspect of his true status when he does not otherwise know it, the State cannot sustain its burden to the Court's satisfaction that the

25

suspect has exercised an informed waiver of rights, regardless of other factors that might support his confession's admission." Ibid.

In Nyhammer, we made clear that the A.G.D. rule was limited to the circumstances of that appeal. 197 N.J. at 404-05. There, we applied the totality-of-the-circumstances test, not a bright-line rule as in A.G.D., to a setting in which law enforcement officers questioned the defendant about his uncle's role in alleged child abuse without disclosing that he was also a suspect. Ibid. Comparing that case to A.G.D., we observed that

> [t]he issuance of a criminal complaint and arrest warrant by a judge is an objectively verifiable and distinctive step, a bright line, when the forces of the state stand arrayed against the individual. The defendant in A.G.D. was purposely kept in the dark by his interlocutors of this indispensable information. Unlike the issuance of a criminal complaint or arrest warrant, suspect status is not an objectively verifiable and discrete fact, but rather an elusive concept that will vary depending on subjective considerations of different police officers. A suspect to one police officer may be a person of interest to another officer. Moreover, we emphasized that "our holding [in A.G.D.] is not to be construed as altering existing case law . . . other than imposing the basic requirement to inform an interrogatee that a criminal complaint or arrest warrant has been filed or issued."
>
> [Ibid. (alteration and omission in original) (quoting A.G.D., 178 N.J. at 68-69).]

We accordingly concluded that Nyhammer did not "fall within the limited category of cases in which we have applied a bright-line rule," and that

26

the officers' failure to disclose to the defendant his status as a suspect before interrogating him should instead "be a factor in the totality-of-the-circumstances test." Id. at 405.

In Vincenty, police officers failed to inform a suspect of formal charges filed against him prior to his interrogation, in which he made self-incriminating statements. 237 N.J. at 126-29. We reiterated A.G.D.'s mandate that law enforcement officers "make a simple declaratory statement at the outset of an interrogation that informs a defendant of the essence of the charges filed against" that defendant. Id. at 134. We viewed the interrogation in Vincenty to be "precisely what A.G.D. prohibits," as it "illustrates that suspects cannot knowingly and intelligently determine whether to waive their right against self-incrimination if, when making that determination, they have not been informed of the charges filed against them." Ibid. We accordingly reversed the trial court's denial of the defendant's motion to suppress and vacated his conviction. Id. at 136.

The rule announced in A.G.D. is clear and circumscribed. If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to the interrogee and inform him in a simple declaratory statement of the charges filed against him before any interrogation. Id. at 134;

Nyhammer, 197 N.J. at 404-05; A.G.D., 178 N.J. at 68-69. The officers need not speculate about additional charges that may later be brought or the potential amendment of pending charges. Nyhammer, 197 N.J. at 404-05; A.G.D., 178 N.J. at 68-69.

C.

We concur with Judge Susswein that the Appellate Division's expansion of the rule stated in A.G.D. is unwarranted and impractical. See Sims, 466 N.J. Super. at 379-86 (Susswein, J., concurring and dissenting).[1]

The rule of A.G.D. mandates disclosure of factual information about pending charges that the officer can readily confirm and clearly convey. Vincenty, 237 N.J. at 132-35; A.G.D., 178 N.J. at 68-69. A complaint issued by either a judge or another judicial officer authorized by N.J.S.A. 2B:12-21, based on a finding of probable cause, is "a written statement of the essential

---

[1] As Judge Susswein observed, neither the Appellate Division majority nor the parties have cited any federal or state case law prescribing a rule analogous to the Appellate Division's new rule. Id. at 383 n.5. As we noted in Nyhammer, "we are not aware of any case in any jurisdiction that commands that a person be informed of his suspect status in addition to his Miranda warnings or that requires automatic suppression of a statement in the absence of a suspect warning." 197 N.J. at 406; accord United States v. Whiteford, 676 F.3d 348, 362 (3d Cir. 2012) (observing that the court is aware of no authority "holding that a defendant must know of the charges against him to validate a Miranda waiver); United States v. Clenney, 631 F.3d 658, 668 (4th Cir. 2011) ("[Miranda] does not require that the suspect be informed of the charges against him.").

28

facts constituting the offense charged." R. 3:2-1(a)(1); see also R. 3:2-3(a), (b) (addressing the contents of arrest warrants, which include the "initial charge" against the defendant).[2] A complaint-warrant or arrest warrant notifies an interrogating police officer that a judge, or other judicial officer, has found probable cause with respect to one or more charges, and enables a police officer to make the "simple declaratory statement" that A.G.D. requires. Vincenty, 237 N.J. at 134.[3] So informed, the arrestee knows his "true status" before waiving his Miranda rights, and may knowingly, intelligently, and voluntarily waive those rights. A.G.D., 178 N.J. at 68.

The principle stated in A.G.D. stands in stark contrast to the Appellate Division's expanded definition of an arrestee's Miranda rights. See Sims, 466 N.J. Super. at 361-69. The Appellate Division's rule relies not on an objective statement of the charges pending against the arrestee, but on an officer's

---

[2] Under N.J.S.A. 2B:12-21(a), "[a]n administrator or deputy administrator of a municipal court, authorized by a judge of that court, may exercise the power of the municipal court to administer oaths for complaints filed with the municipal court and to issue warrants and summonses." See also R. 3:2-3(a) ("The warrant shall be signed by a judicial officer, which for these purposes shall be defined as the judge, clerk, deputy clerk, authorized municipal court administrator, or authorized deputy municipal court administrator.").

[3] The CD-1 complaint-summons and CD-2 complaint-warrant forms identify the original charges and amended charges filed against the defendant. See R. 3:2-1 to -3.

29

prediction, based on information learned to date in a developing investigation, of what charges may be filed. As Judge Susswein observed, even when there is probable cause for an arrest, there may be insufficient information about the victim's injuries, the arrestee's mental state, and other key issues to enable an officer to accurately identify the charges. See id. at 381-83 (Susswein, J., concurring and dissenting). An officer acting in good faith might inadvertently misinform an arrestee as to the charges that he will eventually face.[4] We do not share the Appellate Division's conclusion that law enforcement officers can resolve any ambiguities or disputes about charging decisions before a judicial officer has reviewed the showing of probable cause and issued a complaint-warrant or arrest warrant.

Defendant suggests that if we do not adopt the Appellate Division's new rule, law enforcement officers will deliberately delay seeking a complaint-warrant or arrest warrant in order to avoid disclosing to an arrestee the charges

---

[4] We do not agree with the Appellate Division that the risk of misinformation evaporates because the new rule applies only to arrests arising from an investigation, not "spontaneous" arrests. See Sims, 466 N.J. Super. at 368 n.6. The fact that an investigation has commenced does not mean that police officers can be certain about the charges that will be brought against the defendant. Nor do we subscribe to the majority's view that any logistical concerns are resolved if the new rule requires that an officer disclose only "the charge that, at the time of arrest, the officer had probable cause to believe [the] defendant committed." See id. at 368 n.7. Prior to the issuance of a complaint-warrant or arrest warrant, an officer cannot definitively determine the charges that a given interrogee will face.

30

that he faces. In a case in which there is evidence of such bad-faith conduct on the part of law enforcement officers, the trial court should consider such conduct as part of the totality-of-the-circumstances test. The potential for improper conduct by law enforcement to evade A.G.D. and Vincenty, however, does not justify abandoning the core principles of those decisions.

Our dissenting colleagues unaccountably characterize our decision as a change in our law on the right-against self-incrimination, venturing so far as to suggest that the issue in this case is "whether we will abandon our own jurisprudence," post at ___ (slip op. at 14), and that our ruling creates a "shortcut" that will "erode faith in our criminal justice system," post at ___ (slip op. at 9). To the contrary, it is the dissent that presses for a change in our jurisprudence: a substantial expansion of the rule stated in A.G.D. and Vincenty that confers on suspects broader rights in the interrogation setting than those conferred by federal Fifth Amendment jurisprudence and the State Constitution. See Vincenty, 237 N.J. at 132-35; A.G.D., 178 N.J. at 68-69. Were the dissent's view to prevail, the rule imposed on law enforcement would not comport with our prior precedent, but starkly depart from that precedent and from the law of every other jurisdiction.

In short, we share Judge Susswein's reservations about the Appellate Division's new rule requiring officers to tell an arrestee, not subject to a

31

complaint-warrant or arrest warrant, what charges he faces before interrogating him. We decline to adopt that rule.

D.

Affording to the trial court's findings of fact the deference which our law requires, we affirm the court's application of the totality-of-the-circumstances standard to deny defendant's motion to suppress his statement.

That standard requires that we "consider such factors as the defendant's 'age, education, and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" Nyhammer, 197 N.J. at 402 (quoting Presha, 163 N.J. at 313). The interrogee's "previous encounters with the law" may also be a relevant factor. Presha, 163 N.J. at 313 (quoting State v. Miller, 76 N.J. 392, 402 (1978)). In short, "the root of the inquiry is whether a suspect's will has been overborne by police conduct." Ibid.

As the trial court noted and the record makes clear, defendant was read his Miranda rights and waived those rights verbally and in writing. The court found no evidence that before or during the two-and-a-half-hour interrogation, the detectives threatened defendant, subjected him to mental exhaustion or physical stress, ignored a request to leave, or acted in any manner to overbear

32

his will. As the trial court noted, defendant, who had prior experience with the criminal justice system, repeatedly denied involvement in the shooting during his interrogation.

We find the trial court's findings to be supported by sufficient credible evidence in the record. We concur with the trial court that the totality of the circumstances warranted the denial of defendant's motion to suppress his April 14, 2014 statement to police, and we accordingly reverse the Appellate Division's determination on that issue.

IV.

A.

We next consider the trial court's decision to admit into evidence P.V.'s testimony at the Wade/Henderson hearing at defendant's trial.

Generally, we "review evidentiary rulings under a deferential standard and will 'uphold [the trial court's] determinations absent a showing of an abuse of discretion.'" State v. Trinidad, 241 N.J. 425, 448 (2020) (alteration in original) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). We entrust to trial judges "'a wide latitude of judgment,'" and, therefore, the trial court's evidentiary ruling "will not be upset unless . . . there has been a clear error of judgment." State v. Koedatich, 112 N.J. 225, 313 (1988) (quoting State v. Balthrop, 92 N.J. 542, 548 (1983) (Schreiber, J., dissenting)). We review de

33

novo the court's legal determinations, including its ruling that the admission at trial of P.V.'s testimony at the Wade/Henderson hearing did not violate defendant's confrontation rights. See State v. Wilson, 227 N.J. 534, 544 (2017).

The Appellate Division reversed the trial court's evidentiary determination on two grounds: that P.V.'s prior testimony did not meet the requirements of N.J.R.E. 804(b)(1)(A), and that the admission of that testimony violated defendant's confrontation rights. We consider each issue in turn.

B.

1.

N.J.R.E. 801(c) defines hearsay as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." "Hearsay is generally inadmissible unless an exception applies." State v. Williamson, 246 N.J. 185, 199 (2021); accord N.J.R.E. 802.

Subject to the notice requirements of N.J.R.E. 807, N.J.R.E. 804(b)(1)(A) authorizes the admission of an unavailable declarant's testimony from a prior proceeding if the testimony

> (i) was given by a witness at a prior trial of the same or a different matter, or in a hearing or deposition taken in

34

> compliance with law in the same or another proceeding; and (ii) is now offered against a party who had an opportunity and similar motive in the prior trial, hearing or deposition to develop the testimony by examination or cross-examination.
>
> [N.J.R.E. 804(b)(1)(A).]

First, N.J.R.E. 804(b)(1)(A) requires that the witness who gave the prior testimony be "unavailable," as defined by N.J.R.E. 804(a). N.J.R.E. 804(a) identifies four settings in which a witness is declared "unavailable" for purposes of N.J.R.E. 804, "[e]xcept when the declarant's unavailability has been procured or wrongfully caused by the proponent of declarant's statement for the purpose of preventing declarant from attending or testifying." In one of those settings, a declarant who "persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so" is deemed "unavailable" to testify at trial. N.J.R.E. 804(a)(2); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 804(a) (2022) ("A declarant is 'unavailable' under N.J.R.E. 804(a)(2) if they refuse to testify despite a court order to do so."); State v. Cabbell, 207 N.J. 311, 336 (2011) ("[A] witness is effectively absent from trial and does not 'appear' for cross-examination if he invokes his Fifth Amendment privilege in response to every question.").

Second, N.J.R.E. 804(b)(1)(A) requires that the party against whom the prior testimony is offered had an "opportunity" in the prior trial, hearing, or deposition "to develop the testimony by examination or cross-examination." The 1991 Supreme Court Committee Comment to this rule makes clear that the term, "develop the testimony by examination or cross-examination" is "intended to include direct and redirect examination as well as cross-examination as in Fed. R. Evid. 804(b)(1)." Official Comment to N.J.R.E. 804(b)(1)(A); see, e.g., United States v. Salim, 855 F.2d 944, 953-54 (2d Cir. 1988) (observing that, under Fed. R. Evid. 804(b)(1), a defendant is entitled to "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985))).

Finally, N.J.R.E. 804(b)(1)(A) mandates that the party against whom the prior testimony is offered has a "similar motive in the prior trial, hearing, or deposition to develop the testimony by examination or cross-examination." Construing Fed. R. Evid. 804(b)(1), which is closely analogous to N.J.R.E. 804(b)(1)(A),[5] the Second Circuit has held that

---

[5] Fed. R. Evid. 804(b)(1) authorizes the admission of an unavailable declarant's prior testimony that

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current

36

[t]he proper approach . . . in assessing similarity of motive under Rule 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. The nature of the two proceedings -- both what is at stake and the applicable burden of proof -- and, to a lesser extent, the cross-examination at the prior proceeding -- both what was undertaken and what was available but forgone -- will be relevant though not conclusive on the ultimate issue of similarity of motive.

[United States v. DiNapoli, 8 F.3d 909, 914-15 (2d Cir. 1993) (en banc).]

As the Ninth Circuit has observed, "[t]he 'similar motive' requirement is inherently factual and depends, at least in part, on the operative facts and legal issues and on the context of the proceeding." United States v. Geiger, 263 F.3d 1034, 1038 (9th Cir. 2001) (citing United States v. Salerno, 505 U.S. 317, 324-25 (1992)); see also United States v. Feldman, 761 F.2d 380, 385 (7th Cir. 1985) ("[A] court must evaluate not only the similarity of the issues, but also the purpose for which the testimony is given.").

The State, as the proponent of the evidence, bears the burden to demonstrate both that the declarant is unavailable and that, at the prior trial,

---

proceeding or a different one; and (B) is now offered against a party who had -- or, in a civil case, whose predecessor in interest had -- an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

37

hearing, or deposition, the defendant had an opportunity and similar motive to cross-examine the declarant. See, e.g., State v. Maben, 132 N.J. 487, 500 (1993) (recognizing that the State is required "to prove unavailability and a good-faith effort to procure the witness before allowing the introduction of hearsay testimony").

2.

We view the trial court's admission of P.V.'s prior testimony to constitute a proper application of N.J.R.E. 804(b)(1)(A).

First, the trial court correctly concluded that at the time of defendant's trial, P.V. was a declarant who "persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so," and was therefore "unavailable" under N.J.R.E. 804(a)(2). P.V. confirmed in a hearing outside the jury's presence during trial that he would invoke his right against self-incrimination under the Fifth Amendment if called as a witness. P.V. maintained that position despite the State's offer of immunity pursuant to N.J.S.A. 2A:81-17.3 and the trial court's order that he testify. Accordingly, the State met the "unavailability" requirement of N.J.R.E. 804(a) under subsection (a)(2).

Second, the Wade/Henderson hearing at which P.V. testified was a "hearing" in the "same . . . proceeding" as defendant's trial within the meaning of N.J.R.E. 804(b)(1)(A).

Third, the State demonstrated that at the Wade/Henderson hearing, defendant had "an opportunity . . . to develop the testimony by examination or cross-examination." N.J.R.E. 804(b)(1)(A). Indeed, when cross-examined by defense counsel, P.V. claimed not to recall the April 9, 2014 shooting. He suggested that some of the responses attributed to him in the transcript of his statement constituted his mother's comments, not his. P.V. implied that his statement to police was affected by the medication that he was taking. He stated that he did not have a close relationship with defendant or his brother. P.V. denied any recollection of identifying defendant as the man who shot him. He expressed fear of the prosecutor's office and the police, and confirmed his prior convictions and prison sentences. In short, defense counsel not only had the opportunity to cross-examine P.V., as N.J.R.E. 804(b)(1)(A) requires, but thoroughly and skillfully questioned P.V. The jury had the benefit of that cross-examination when it considered P.V.'s Wade/Henderson hearing testimony and assessed his credibility.

Fourth, the State also demonstrated that defendant had a "similar motive" at the Wade/Henderson hearing "to develop the testimony by

39

examination or cross-examination." N.J.R.E. 804(b)(1)(A). At the hearing, as at trial, defendant's motive was to impeach P.V.'s credibility, underscore P.V.'s claimed lack of recollection, suggest that police coercion was a factor in P.V.'s identification of defendant, and attack P.V.'s statement as unreliable. In short, defendant's objectives in the two settings were similar, if not identical.

Accordingly, the trial court properly ruled that P.V.'s prior testimony was admissible pursuant to N.J.R.E. 804(b)(1)(A).

## C.

### 1.

We next consider defendant's argument that the introduction of P.V.'s statement violated his rights under the Confrontation Clause.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; see also N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right . . . to be confronted with the witnesses against him . . . ."\).

Our confrontation jurisprudence "traditionally has relied on federal case law to ensure that the two provisions provide equivalent protection." State v. Roach, 219 N.J. 58, 74 (2014); see also State v. Miller, 170 N.J. 417, 425 (2002) (explaining that "[t]he New Jersey Constitution contains a cognate

40

guarantee" to that of the Sixth Amendment); Cabbell, 207 N.J. at 328 n.11 (noting that for purposes of the Court's discussion in that case, "references to the Sixth Amendment are interchangeable with Article I, Paragraph 10 of our State Constitution").

In Crawford v. Washington, the United States Supreme Court held that the framers of the Constitution intended the Confrontation Clause to bar the admission of "testimonial statements of a witness who did not appear at trial unless [the declarant is] unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004).

The State need not demonstrate that the defendant undermined the credibility of the unavailable witness at the prior proceeding to satisfy the constitutional test; as the Supreme Court has noted, "successful cross-examination is not the constitutional guarantee." United States v. Owens, 484 U.S. 554, 560 (1988); accord Cabbell, 207 N.J. at 337. Instead, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Fensterer, 474 U.S. at 20. Although "Crawford does not provide a specific standard for determining whether a defendant had an opportunity to cross-examine a witness, . . . it

does suggest that the prior opportunity must be adequate." Rolan v. Coleman, 680 F.3d 311, 327 (3d Cir. 2012) (citing Crawford, 541 U.S. at 57).

Federal courts have held that a witness's testimony at a preliminary hearing, such as the Wade/Henderson hearing at issue here, can provide the constitutionally mandated opportunity to cross-examine. See Gibbs v. Covello, 996 F.3d 596, 601 (9th Cir.) (holding that the government did not offend the Confrontation Clause when it introduced the preliminary hearing testimony of a witness unavailable at trial as long as the defendant had a prior opportunity to cross-examine), cert. denied, 142 S. Ct. 453 (2021); United States v. Ralston, 973 F.3d 896, 911 (8th Cir. 2020) (affirming the district court's decision rejecting a confrontation challenge to an unavailable witness's testimony at a preliminary hearing); Williams v. Bauman, 759 F.3d 630, 634-35 (6th Cir. 2014) (holding that the defendant's confrontation rights were not violated by the admission of preliminary hearing testimony of a witness who died before trial); Rolan, 680 F.3d at 326-37 (affirming the district court's holding that the defendant had an opportunity to cross-examine a witness at a prior trial and preliminary hearing that satisfied the Confrontation Clause).

Moreover, the defendant may be deemed to have had a prior opportunity for cross-examination even if the witness denies recollection of relevant events. The Supreme Court has noted that the Confrontation Clause provides

42

"no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion," but rather "is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Owens, 484 U.S. at 558 (quoting Fensterer, 474 U.S. at 21-22); accord State v. Brown, 138 N.J. 481, 543 (1994) ("[A] witness's feigned lack of recollection . . . [does] not rise to the level of denying a defendant's federal and state constitutional right to confront witnesses."). As Justice Harlan has observed,

> The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts, . . . I think confrontation is nonetheless satisfied.
>
> [California v. Green, 399 U.S. 149, 188-89 (1970) (Harlan, J., concurring).]

In Owens, the Supreme Court held that "[i]t is sufficient [under the Confrontation Clause] that the defendant has the opportunity to bring out such

43

matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination . . . ) the very fact that he has a bad memory." 484 U.S. at 559 (citation omitted). Moreover, "[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." Id. at 560; see also United States v. Milton, 8 F.3d 39, 47 (D.C. Cir. 1993) ("When a witness has forgotten the basis for and the giving of testimony under oath in an earlier proceeding and that testimony is then introduced into evidence, defense questioning, though impaired, is not futile for the reasons given in Owens.").

Accordingly, the Confrontation Clause is not violated by the admission of an unavailable witness's prior testimony simply because that witness claims that he does not recall the event at issue. Owens, 484 U.S. at 559.

2.

We agree with the trial court that P.V.'s Wade/Henderson hearing testimony met the requirements of the Confrontation Clause.

First, just as P.V. was an "unavailable" declarant as defined in N.J.R.E. 804(a)(2), he was "unavailable to testify" at trial for purposes of the Confrontation Clause. See Crawford, 541 U.S. at 53.

44

Second, defendant had the adequate "prior opportunity for cross-examination" envisioned by the Supreme Court's confrontation jurisprudence. See ibid.; Owens, 484 U.S. at 558.

We disagree with the Appellate Division's conclusion that the trial court's admission of P.V.'s Wade/Henderson hearing testimony violated the Confrontation Clause because "[d]efendant did not have the opportunity to cross-examine [P.V.] about his statement to police -- either at the pretrial hearing or in front of the jury," and had "nothing to cross-examine [P.V.] about at the Rule 104 hearing." Sims, 466 N.J. Super. at 377-78.

To the contrary, at the Wade/Henderson hearing, defendant had the opportunity to attack the credibility of P.V.'s statement identifying defendant as the shooter. Indeed, defendant elicited P.V.'s testimony disclaiming recollection of any statement, implying that comments attributed to him were his mother's, and inferring that he acted out of fear of some of the investigating officers. By virtue of the direct and cross-examination at the Wade/Henderson hearing, the jury was fully informed that P.V. denied any recollection of the shooting or his statement to police. See Owens, 484 U.S. at 558 (noting that the Confrontation Clause is satisfied when the defendant has the "full and fair opportunity to probe and expose" the witness's claim not to

45

recall critical events, thus underscoring for the jury the reasons why it should give his testimony little or no weight (quoting Fensterer, 474 U.S. at 21-22)).

Nor do we subscribe to the Appellate Division's view that defendant's rights were violated because he "never had the opportunity to cross-examine the victim before the factfinder that was to decide his fate." Sims, 466 N.J. Super. at 378. If the Confrontation Clause required every declarant to appear before the jury for cross-examination, it would prohibit the admission of an unavailable witness's prior testimony as an exception to the hearsay rule, which it clearly does not. As the Supreme Court has observed, it has "never insisted on an actual face-to-face encounter at trial in every instance in which testimony is admitted against a defendant" and has instead "repeatedly held that the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." Maryland v. Craig, 497 U.S. 836, 847-48 (1990).

Finally, we do not share the Appellate Division's view that the trial court improperly admitted P.V.'s April 13, 2014 statement to police at the hospital through the State's questioning of P.V. at the Wade/Henderson hearing. Sims, 466 N.J. Super. at 371-72, 376-78. P.V.'s April 13, 2014 statement was not offered into evidence -- let alone admitted into evidence -- at defendant's

46

trial.[6] No recording or transcript of that statement was presented to the jury.

When the trial court overruled defendant's evidentiary and constitutional

objections to the admission of P.V.'s Wade/Henderson testimony, it was not

asked to exclude any portion of that testimony on the ground that questions

posed to P.V. revealed the contents of his prior statement to police.  Neither

the Appellate Division nor defendant cited authority that would require the

exclusion of the prior testimony on that ground.[7]

---

[6]  Our dissenting colleagues contend that P.V.'s statement to police in the hospital was admitted into evidence at trial.  Post at ___ n.5 (slip op. at 16 n.5).  As the record reveals, that is simply incorrect.  Immediately after the trial court told the jury that it would hear P.V.'s statement from "a prior proceeding" and that it may consider it as substantive evidence, the State presented P.V.'s testimony at the Wade/Henderson hearing during Weisbrot's direct examination.  The trial court's comments clearly referred to P.V.'s prior testimony, not the hospital statement.  The State made no attempt to introduce the transcript of P.V.'s hospital statement at trial into evidence, and the jury was not presented with any portion of that statement, other than in the prosecutor's reading of questions posed to P.V. during his testimony at the Wade/Henderson hearing.

[7]  The decisions by this Court cited by the Appellate Division on this point do not suggest that prior testimony admissible under N.J.R.E. 804(b)(1) violates the Confrontation Clause because questions posed to the witness in the prior trial, hearing, or deposition incorporated the contents of an out-of-court statement.  See generally Sims, 466 N.J. Super. at 375-78.  In Cabbell, we held that the defendant's confrontation rights were violated because the trial court admitted the out-of-court statement of a witness who was available at trial and subject to direct examination but did not provide the defendant the opportunity to cross-examine the witness.  207 N.J. at 329-33.  In State v. Coder, we held that the admission of an unavailable child witness's out-of-court statement pursuant to the "tender years" exception to the hearsay rule, N.J.R.E. 803(c)(27), did not violate the Confrontation Clause.  198 N.J. 451, 467-70

47

Trial courts should be alert to the potential for the improper admission of hearsay within hearsay and for confrontation issues that may arise in such settings. See N.J.R.E. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). In this case, we find no such error.

Accordingly, we reverse the Appellate Division's determination that the admission of P.V.'s Wade/Henderson hearing testimony at trial violated the hearsay rule and offended the Confrontation Clause.

V.

The judgment of the Appellate Division is reversed, and the matter is remanded to the appellate court for its review of the prosecutorial misconduct and sentencing issues raised by defendant on appeal.

CHIEF JUSTICE RABNER and JUSTICE SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.

---

(2009). Finally, in Nyhammer, we affirmed the admission of a child victim's out-of-court statement because the defendant had the opportunity to cross-examine the victim at trial and elected not to exercise that right. 197 N.J. at 389.

State of New Jersey,

Plaintiff-Appellant,

v.

Anthony Sims, Jr.,

Defendant-Respondent.

JUSTICE ALBIN, dissenting.

In a free society that values individual liberty, no person should be taken from his home or off the streets by the police, placed in handcuffs and kept in custody, and not told the reason for his arrest. Most people will be surprised to learn that they can be detained without explanation for a period of hours, if not longer, as the majority now holds.

Four law enforcement officers arrested Anthony Sims, but not one told him why he was under arrest -- not even when he asked for an explanation. Sims was handcuffed, placed in a police vehicle, and transported to a satellite office of the Monmouth County Prosecutor's Office -- not knowing why he was in custody. In that satellite office, the interrogating officers advised Sims

1

of his <u>Miranda</u>[1] rights and elicited from him a waiver of his rights without revealing to him that he was in custody for the attempted murder of P.V. Concealing from Sims the charges that he was facing did not comport with the guarantees afforded to the accused under our state law against self-incrimination or our state's jurisprudence.

When police officers make an arrest based on probable cause, they must have a reason for doing so -- they must have determined that the person arrested violated a specific law. That being the case, the officers should have no difficulty telling the person the charge or charges that they believe justify the defendant's detention. Even when a complaint-warrant has not been secured in advance, no interrogation should proceed until the accused is told the charges for which he is <u>then</u> held in custody. Without that critical information, a defendant cannot intelligently decide whether to waive his right against self-incrimination. That other charges may develop during the investigation is no excuse for officers to withhold the specific charges that prompted a defendant's arrest.

I therefore would affirm the Appellate Division's suppression of Sims's statement.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

2

I would also affirm the Appellate Division's suppression of the out-of-court statements made by P.V. incriminating Sims. P.V. testified at the Wade[2] hearing that he did not recall making those statements against Sims and later refused to testify before the jury, even when offered immunity and threatened with contempt. Sims therefore was denied the opportunity to cross-examine P.V. at trial. Sims's cross-examination of P.V. at the Wade hearing was not an adequate substitute for his Sixth Amendment confrontation rights at trial. At the Wade hearing, Sims did not have a similar opportunity or motive to cross-examine P.V. as he would have had at trial.

I would reverse Sims's conviction, substantially for the reasons given by the Appellate Division. Accordingly, I respectfully dissent.

## I.

New Jersey's privilege against self-incrimination is codified in our statutory law, N.J.S.A. 2A:84A-19, and rules of evidence, N.J.R.E. 503, and "is so venerated and deeply rooted in this state's common law that it has been deemed unnecessary to include the privilege in our State Constitution." State v. O'Neill, 193 N.J. 148, 176 (2007) (citing State v. Reed, 133 N.J. 237, 250 (1993)). Indeed, "[w]e have treated our state privilege as though it were of

---

[2] United States v. Wade, 388 U.S. 218 (1967).

constitutional magnitude." Ibid. In our case law, we have highlighted "[t]he textual differences between the plain language of our state privilege and the Fifth Amendment" and have found that our state law privilege "offers broader protection than its Fifth Amendment federal counterpart."[3] Id. at 176-77 (citing State v. Muhammad, 182 N.J. 551, 568 (2005)). That is a point largely ignored by the majority.

The issue is not whether we should adhere to federal jurisprudence but whether we will abandon our own jurisprudence. If our way is lighted by our jurisprudence, then we should find that, before the start of an interrogation, the failure to advise a defendant of the specific charges that were the basis for his arrest is a violation of our state law against self-incrimination. In suppressing Sims's statement, the Appellate Division did nothing more than follow the inescapable logic of this Court's case law.

In State v. A.G.D., a detective obtained a warrant to arrest the defendant for the sexual abuse of a child. 178 N.J. 56, 59-60 (2003). The detective and another detective visited the defendant's home and explained to him that they

---

[3] N.J.S.A. 2A:84A-19 and N.J.R.E. 503, provide in identical language that "every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate." In contrast, the Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."

4

wanted to question him about sexual abuse allegations, and he accompanied them to the prosecutor's office. Ibid. The detectives kept from the defendant the arrest warrant they had in hand and did not advise him he was under arrest. Id. at 59. Instead, in the usual course, the detectives informed the defendant of his Miranda rights, and the defendant waived those rights without knowing his true predicament. Id. at 60. During the interrogation that followed, the defendant incriminated himself. Ibid.

We found that, in securing a waiver of rights from the defendant, the detectives deprived him of "critically important information" -- knowledge of the criminal complaint filed against him and of the arrest warrant in the detective's pocket. Id. at 68. We held that the detectives had concealed "information indispensable to a knowing and intelligent waiver of rights." Ibid. We concluded that "[w]ithout advising the [defendant] of his true status," the State did not satisfy its burden of proving that he "exercised an informed waiver of rights," and accordingly we suppressed his incriminating statements. Id. at 68-69.

In deciding A.G.D., we relied on "the New Jersey common law privilege against self-incrimination[, which] affords greater protection to an individual than that accorded under the federal privilege." Id. at 67 (quoting In re Grand Jury Proc. of Guarino, 104 N.J. 218, 229 (1986)). We stated that our Court has

5

"actively embraced the opportunity to move beyond the guidelines of federal directives in pursuit of an unyielding commitment to ensure the proper admissibility of confessions." Ibid. (quoting Reed, 133 N.J. at 252).

In State v. Vincenty, we elaborated on A.G.D., stating that our decision in that case "calls for law enforcement officials to make a simple declaratory statement at the outset of an interrogation that informs a defendant of the essence of the charges filed against him." 237 N.J. 122, 134 (2019). "That information," we added, "should not be woven into accusatory questions posed during the interview." Ibid. The defendant in Vincenty, as in A.G.D., was "[u]naware that charges had been filed against him" in a criminal complaint when he waived his right against self-incrimination. Id. at 128-29, 134. We pointedly stated in Vincenty that detectives "failed to inform [the defendant] of the specific criminal charges filed against him" and withheld from him "critically important information." Id. at 135. Because the detectives "deprived [the defendant] of the ability to knowingly and voluntarily waive the right against self-incrimination," we suppressed his statement. Id. at 135-36.

The only distinction between A.G.D. and Vincenty and this case is that, here, the detectives had probable cause to charge Sims with attempted murder but did not bother to secure a judicially authorized criminal complaint and arrest warrant before taking Sims into custody and questioning him. The

6

detectives knew why they had arrested Sims, but Sims did not. The detectives purposely withheld from Sims "critically important information" -- "information indispensable to a knowing and intelligent waiver of rights." A.G.D., 178 N.J. at 68; see also Vincenty, 237 N.J. at 135.

This case is unlike State v. Nyhammer, where the defendant was merely a suspect -- and not under arrest -- before the police began questioning him. 197 N.J. 383, 404-05 (2009). There, we held that the police did not have to disclose their motives to the defendant before commencing the interrogation. Ibid. In Nyhammer, we drew the line for disclosure at arrest because an arrest is "an objectively verifiable and distinctive step, a bright line, when the forces of the state stand arrayed against the individual." Id. at 404. Suspect status, we noted, is "an elusive concept that will vary depending on subjective considerations of different police officers." Id. at 405.

Sims was more than a suspect. He was under arrest. He was the accused. The forces of the State were already arrayed against him. The detectives were going to charge Sims with attempted murder whether or not he submitted to questioning. Surely, the detectives' timing of when to obtain the arrest warrant and criminal complaint should not be the decisive factor in determining whether the accused is provided the critical information necessary to make an informed decision whether to waive his rights.

I agree with the majority that "officers need not speculate about additional charges that may later be brought or the potential amendment of pending charges" when interrogating a defendant. Ante at ___ (slip op. at 28) (citing Nyhammer, 197 N.J. at 404-05; A.G.D., 178 N.J. at 68-69). In my view, the officers simply must act in good faith, be honest with the defendant, and advise him of the charge or charges for which he was arrested. In this case, no one seems to dispute that the detectives arrested defendant for attempted murder. The detectives denied Sims critical information necessary to make an informed decision whether to waive his rights.

The majority opinion encourages law enforcement officers to game the system. Officers will now know that a delay in the filing of the criminal complaint will allow them to withhold from the arrested defendant the true nature of the charges before the interrogation begins, as occurred here. The State should be made to walk square corners. The shortcut the majority permits, allowing the police to arrest a person and keep him in the dark about the reasons for his arrest, will erode faith in our criminal justice system.

The State failed to prove the voluntariness of Sims's statement beyond a reasonable doubt as required under our law. See State v. Burris, 145 N.J. 509, 534 (1996). Accordingly, the Appellate Division correctly ruled that his statement should have been suppressed and not admitted at trial.

8

## II.

Four days after he was shot multiple times in his grandmother's driveway, P.V. gave a signed statement to the detectives in the hospital where he was recovering from his wounds. In the statement, P.V. named Sims, whom he had known for more than ten years, as the shooter and identified a photograph of Sims.

At the Wade hearing, P.V. denied having any recollection of the shooting or of making any of the statements recorded by the police. P.V. then refused to testify at trial, despite offers of immunity. The jury was denied the opportunity to see P.V. on the stand and to assess his credibility firsthand.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (citing Crawford v. Washington, 541 U.S. 36, 54 (2004)). A prior opportunity for cross-examination means that the defendant must have had the opportunity to conduct a meaningful cross-examination. See United States v. Owens, 484 U.S. 554, 561-62 (1988). Even when a witness takes the stand in

9

a criminal trial, a defendant's confrontation rights are not satisfied unless he is given "a full and fair opportunity to probe and expose [the] infirmities" of the witness's testimony. See id. at 558 (quoting Delaware v. Fensterer, 474 U.S. 15, 22 (1985)).

A witness's claim of lack of recollection will not bar the hearsay admission of some out-of-court statements, provided the witness testifies at trial, permitting the jury to gauge the witness's credibility. Ibid. However, "[i]n that situation . . . the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements." Id. at 560 (citing California v. Green, 399 U.S. 149, 158-61 (1970)).

For example, in Owens, from his hospital room, the victim-witness provided officers a statement identifying Owens as the perpetrator of an assault against him. Id. at 556. At trial, however, the witness could no longer recall seeing his assailant. Ibid. The Court found the cross-examination of the witness before the jury to be sufficient for Confrontation Clause purposes because, in that scenario, the jury had the opportunity to "be persuaded that [the witness's] opinion [was] as unreliable as his memory." Id. at 558 (quoting Fensterer, 474 U.S. at 19).

Similarly, under the New Jersey exception to the hearsay rule, a witness's prior inconsistent statements are admissible to allow the jury to determine whether "the witness is lying, and to give the jury an alternative account of the events that it may choose to use as substantive evidence rather than the account offered by the witness. The jury, however, must observe the witness and make a decision about which account is true." State v. Brown, 138 N.J. 481, 544 (1994).

Under the Confrontation Clause and our evidence rules, P.V.'s statements to the detectives at the hospital were admissible at the Wade hearing, despite his claimed lack of recollection. See Owens, 484 U.S. at 560-62; Brown, 138 N.J. at 542-43. However, unlike in Owens and Brown, here P.V. did not appear at trial. The jury did not have the opportunity to hear from or scrutinize P.V. on the witness stand to determine whether his lack of memory at the Wade hearing was feigned or real or whether he gave an honest or accurate account of his identification of Sims as his assailant at the hospital.

At the time of Sims's trial, P.V. was awaiting trial for murdering Sims's brother and refused to testify. P.V.'s hearsay statement at the hospital was laundered through the Wade hearing intact and presented fresh at trial but without a witness to confront. Under the circumstances in this case, the damning hearsay statement was too many steps removed from its source to be

11

credited for Confrontation Clause purposes. See Preston v. Superintendent Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018) ("[T]he use of a witness's prior statement against a criminal defendant violates the defendant's Confrontation Clause rights when the witness refuses to answer any substantive questions on cross-examination."). The bootstrapping of the hearsay statement deprived Sims of his right of cross-examination at trial.

Critical to that analysis is that Sims did not have the "prior opportunity" to meaningfully cross-examine P.V. at the Wade hearing in the way he would have if P.V. had testified at trial.

A Wade hearing has a limited purpose. It "is to examine police procedures surrounding an out-of-court identification of the defendant for a taint of suggestiveness," Lynn v. Bliden, 443 F.3d 238, 249 (2d Cir. 2006), and, if the procedures were suggestive, to ascertain the identification's reliability, State v. Henderson, 208 N.J. 208, 238 (2011). It "is not to determine whether there are 'inconsistent identifications' nor to obtain more fodder for cross-examination." Lynn, 443 F.3d at 249. Our judges understand the limitations of a Wade hearing; it is not an occasion for attorneys to rummage for discovery that might be useful at trial for impeachment purposes. Judges corral attorneys who wander afield. Moreover, attorneys ordinarily do not cross-examine a witness at a Wade hearing with the expectation that the

12

witness, when called to the stand at trial, will refuse to testify, disregarding a grant of immunity and the threat of a contempt citation. In short, the permissible parameters of cross-examination at a <u>Wade</u> hearing and at a trial are not co-extensive. Sims's attorney made clear that his cross-examination of P.V. at trial would have been far more extensive than the one at the <u>Wade</u> hearing.

Our evidence rules do not permit an unavailable witness's prior testimony to be used against a defendant unless the defendant "had an opportunity and similar motive in the prior trial, hearing or deposition to develop the testimony by examination or cross-examination." N.J.R.E. 804(b)(1)(A). For Confrontation Clause purposes as well, a defendant who does not have a similar opportunity or motive to cross-examine the witness at an earlier hearing will not have had the meaningful opportunity to develop the testimony for trial.

That is what occurred here. Sims did not have the same motive or opportunity to cross-examine P.V. at the <u>Wade</u> hearing as he would have at trial had P.V. testified. Sims therefore was denied the meaningful opportunity for cross-examination guaranteed by the Sixth Amendment's Confrontation Clause. <u>See</u> <u>Owens</u>, 484 U.S. at 559-602.

Last, none of the circuit cases cited by the majority support its conclusion that a witness's statement at a <u>Wade</u> hearing is admissible at trial when the witness is unavailable. <u>Ante</u> at ___ (slip op. at 41-42). Each of the four cases cited by the majority concerned a preliminary hearing, a proceeding that is far different and broader in scope than a <u>Wade</u> hearing.[4]

For example, criminal prosecutions in California may proceed by way of the filing of an information rather than the return of a grand jury indictment. An accused charged by information is given a <u>preliminary hearing</u>. At the preliminary hearing, the accused has the right of "confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence." <u>Hawkins v. Superior Ct.</u>, 586 P.2d 916, 917-18 (Cal. 1978); <u>see also</u> <u>Holman v. Superior Ct.</u>, 629 P.2d 14, 18 (Cal. 1981) (Bird, C.J., concurring) ("[T]he functions of the preliminary

---

[4] In addition, three of the cases arose in the context of federal habeas corpus in which the federal courts' power to review a state law conviction is extremely limited. <u>See</u> <u>Gibbs v. Covello</u>, 996 F.3d 596, 603 (9th Cir.) (explaining that the standard governing habeas corpus limits the federal courts' power of review and concluding that the Confrontation Clause claim "is a close one, and if we were answering that question de novo, we might" find there to be a violation), <u>cert. denied</u>, 142 S. Ct. 453 (2021); <u>Williams v. Bauman</u>, 759 F.3d 630, 636 (6th Cir. 2014) (explaining that, given a federal court's limited remedial powers on habeas corpus review, so long as a state court decision on a Confrontation Clause issue leaves "room for reasonable debate," it must be upheld, "even if it turns out to be wrong").

14

hearing in our criminal process are broad and complex."); State ex rel. Whitehead v. Vescovi-Dial, 950 P.2d 818, 820 (N.M. Ct. App. 1997) ("[T]he preliminary hearing legitimately may provide an opportunity for discovery by either side; it may help a party in preparation for future impeachment; it also may be used to perpetuate testimony for later use at trial." (citing 2 Wayne LaFave & Jerold H. Israel, Criminal Procedure §§ 14.1(b), (c), (d) (1984))).

A preliminary hearing is not comparable to a Wade hearing. The majority cannot point to a single reported case from any jurisdiction where the prosecution was permitted to introduce at trial an unavailable witness's testimony at a Wade hearing.[5]

_____

[5] The majority is incorrect in declaring that "P.V.'s April 13, 2014 statement was not offered into evidence -- let alone admitted into evidence -- at defendant's trial." Ante at ___ (slip op. at 46-47). The purpose of the prosecutor's reading to the jury the Wade hearing transcript was to get into evidence P.V.'s hospital statement. The Wade hearing transcript had no other value. At the Wade hearing, P.V. had no recollection of the incident or his statement to the detectives. The transcript provided the colloquy between the prosecutor and P.V., which included the substance of P.V.'s statement made to the police at the hospital. Tellingly, the trial court instructed the jury that P.V.'s statement was in evidence, stating "you will be afforded the opportunity to hear [P.V.]'s statement from a prior proceeding that you may now consider as substantive evidence." (emphasis added). In addition, in response to a jury question, the trial court made clear "that the statement of the victim at the hospital is subsumed on this record within the testimony of Detective Weisbrot."

15

## III.

In summary, I would affirm the Appellate Division and reverse defendant's conviction because the admission of Sims's statement to the detectives violated his right against self-incrimination and because the admission of P.V.'s hearsay statements to the detectives implicating Sims violated Sims's confrontation rights.

I therefore respectfully dissent.